**Bayard P. KEELER, Plaintiff Below, Appellant,**

v.

**HARFORD MUTUAL INSURANCE COMPANY, Defendant Below, Appellee.**

**No. 207, 1995.**

Supreme Court of Delaware.

Submitted: Jan. 25, 1996.

Decided: Feb. 29, 1996.

As Amended March 11, 1996.

Rehearing Denied March 20, 1996.

Sidney Balick (argued), and Adam Balick, Sidney Balick & Associates, Wilmington, for appellant.

William J. Cattie, III, Heckler & Cattie, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en banc.

WALSH, Justice:

This appeal from the Superior Court presents the issue of whether a workers' compensation carrier is entitled to be reimbursed for amounts it paid to an injured worker without sharing in the costs of the litigation which made reimbursement possible. Despite our decision to the contrary in *Cannon v. Container Corp. of Am.*, Del.Supr., 282 A.2d 614 (1971), we now hold that the language of 19 *Del.C.* § 2363 requires that the insurance carrier pay a share of the costs of litigation proportionate to the amount of its recovery. The decision of the Superior Court is therefore reversed.

I.

The facts underlying the carrier's reimbursement claim are not in dispute. On November 6, 1989, the appellant, Bayard P. Keeler ("Keeler"), was injured while working for Steel Suppliers, Inc. The appellee, Harford Mutual Insurance Co. ("Harford"), was the workers' compensation carrier for Steel Suppliers and ultimately paid $83,543.74 to or on the behalf of Keeler in workers' compensation benefits for medical expenses and lost wages. Thereafter Keeler filed an action in tort against Whiting–Turner Contracting Company ("Whiting–Turner") alleging that his injuries were attributable to the negli-

gence of Whiting–Turner. As provided by 19 *Del.C.* § 2363, Harford became entitled to reimbursement for its payments to Keeler in the event of a settlement or recovery against Whiting–Turner. In January 1995, Keeler recovered a judgment against Whiting–Turner in the amount of $570,000. The award was later reduced to $450,000 pursuant to a mid-trial high-low settlement agreement between Keeler and Whiting–Turner. That sum was paid in full and final satisfaction of the judgment. From the award, Keeler expended $4,285 for medical treatment, $9,097 in litigation costs, and $150,000 in attorney's fees. A dispute arose, however, concerning whether Harford should receive the full amount of its lien or whether that amount should be net of counsel fees.

## II.

Keeler sought a declaratory judgment in the Superior Court regarding his obligation to reimburse Harford for its lien in full. The parties' disagreement turned on their respective interpretations of 19 *Del.C.* § 2363, which provides in part:

(e) In an action to enforce the liability of a third party, the plaintiff may recover any amount which the employee or his dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries ..., after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable under the Workers' Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits....

(f) Expenses of recovery shall be the reasonable expenditures, including attorney fees, incurred in effecting such recovery.... The expenses of recovery above mentioned shall be apportioned by the court between the parties as

their interests appear the time of said recovery.

The Superior Court held that the matter was controlled by *Cannon v. Container Corp. of Am.*, Del.Supr., 282 A.2d 614 (1971), and ruled that the insurance carrier need not pay a portion of the recovery costs, including attorney's fees. In *Cannon* this Court held that, under § 2363, distributions from a tort award against a third party were to be made in the following sequence:

(1) deduction of the expenses of the recovery, including attorneys' fees;

(2) reimbursement to the carrier of any past benefits paid to the employee as of the date of the recovery; and

(3) distribution of any balance to the employee, to be credited against any future benefits to which the employee may be entitled as the result of the accident involved.

*Cannon*, 282 A.2d at 616. Although it questioned the continued vitality of the *Cannon* holding, the Superior Court was of the view that any reconsideration of the reasoning in *Cannon* was properly a matter for this Court.

On appeal, Keeler argues that the language of the statute and considerations of fairness require the reversal of *Cannon*. To the contrary, Harford contends that our previous decision is correct and controls the result here. Furthermore, Harford asserts that we may not reconsider our interpretation of the statute since that interpretation was implicitly approved by the General Assembly when it amended § 2363 without further amending the statute to negate *Cannon's* declaration of legislative intent.

## III.

■ We conclude that not requiring workers' compensation carriers to bear part of the cost of third party tort litigation where recovery results in reimbursement of benefits is inequitable and contrary to the language of the statute. While the Court in *Cannon* was undoubtedly influenced by the somewhat unusual facts of that case, the general application of the rule promulgated therein cannot be supported. Therefore, the holding in

*Cannon* that insurers are to be reimbursed in full without bearing a proportional part of the litigation costs is hereby overruled.

### A.

In *Cannon*, this Court decided that an insurer was to be paid its workers' compensation lien in full before subtracting costs. 282 A.2d at 616. Unlike this case, the insurer had brought suit and participation by the employee was minimal. *Id.* at 615–16. In that scenario, the *Cannon* Court was apparently influenced by the belief that the employee was unjustifiably benefitting from the effort of, and at the expense of, the insurer. Ultimately, the Court held that the language of § 2363 required that the employee bear all of the costs of litigation.

The *Cannon* Court relied on Larson's *Workmen's Compensation* treatise as authority for its interpretation of the statute. At that time, Larson stated that "[i]f the sum recovered by the employee is more than enough to pay the attorney's fees and reimburse the carrier, the carrier is reimbursed in full, and ... is not required to share the legal expenses involved in obtaining recovery." *Cannon*, 282 A.2d at 617 (citing 2 Arthur Larson, *The Law of Workmen's Compensation* § 74.32, at 226.118). The treatise upon which the Court relied has been revised to reflect the fact that the majority of jurisdictions now recognize the rule that requires both parties to share in the costs of litigation.[1] The treatise revision seriously under-

mines the continuing force of the reasoning in *Cannon*.

### B.

Harford contends that the General Assembly's amendment of § 2363 without altering the result reached in *Cannon* demonstrates that *Cannon* is consistent with legislative intent. Harford correctly notes that this Court has previously viewed legislative reenactment as agreement on the part of the General Assembly with this Court's prior interpretation of that legislation. *See Allen v. Prime Computer, Inc.*, Del.Supr., 540 A.2d 417, 420 (1988).

■ Legislative reenactment is a tool used to determine legislative intent. It guides statutory construction where it provides an insight into probable intent, *e.g.*, where the General Assembly has actually recognized the problem that this Court has addressed in the past and reenacted the statute without change.[2] Scholars have noted, however, that for every canon of statutory construction there is another which may yield the opposite outcome. *See* Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand.L.Rev. 395 (1950). In the final analysis, rules of construction are aids in the quest to ascertain the legislative intent, but application of a single .standard may not necessarily resolve uncertainty. Legislative reenactment may be a valuable

---

1. That treatise now provides:

 In a substantial majority of states, when a third party suit is brought or recovery effected by the employee, the employer or carrier is now obliged to pay a portion of the attorney's fees out of his share. The emergence of this majority rule is the result of both a number of legislative amendments, not least in the major compensation jurisdictions, and of a similar trend in decisional law.

 2A Arthur Larson, *The Law of Workmen's Compensation* § 74.32(a), at 14–535 (1995).

2. The United States Supreme Court has declined to interpret legislative reenactment as assent to a previous interpretation where there is no indication that Congress examined or was aware of the issue. *See, e.g., Rowan Cos. v. United States*, 452 U.S. 247, 260–62 & n. 15, 101 S.Ct. 2288, 2295–96 & n. 15, 68 L.Ed.2d 814 (1981) (holding that reenactment of statute without change does not

give prior interpretation "effect of law" where, *inter alia*, there is no evidence of Congressional consideration of prior interpretation during reenactment); *Toussie v. United States*, 397 U.S. 112, 119–20, 90 S.Ct. 858, 862–63, 25 L.Ed.2d 156 (1970) (Congressional silence during reenactment of statute does not indicate adoption of prior judicial interpretation); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955) ("Re-enactment— particularly without the slightest affirmative indication that Congress ever had the [previous] decision before it—is an unreliable indicium at best."); *cf. United States v. Bd. of Comm'rs*, 435 U.S. 110, 135, 98 S.Ct. 965, 980, 55 L.Ed.2d 148 (1978) (finding Congressional ratification through inaction when legislative history showed Congress agreed with previous interpretation).

rule in some circumstances, but does not always yield the correct result.[3]

 In this case, we are unpersuaded that the post-*Cannon* amendment to § 2363(e) implies that the General Assembly intended to adopt our previous construction of § 2363 in *Cannon*. There is no indication that the General Assembly ever considered this precise issue. According to the synopsis to the 1993 amendment, 69 *Del.Laws*, ch. 116, § 1, was "intended to clarify subrogation rights of insurers where both worker's compensation and no-fault benefits are payable to an injured person."[4] Section 2 of 69 *Del.Laws*, ch. 116 provided penalties for no-fault insurance carriers who delay payment of valid claims. Nothing in the amendment spoke to the apportionment of attorney's fees in suits against third-party tortfeasors in the workers' compensation context. To construe legislative silence as an affirmative endorsement of a prior holding of this Court is an interpretive step which cannot be justified in light of what is known of the background and the language of the 1993 amendment.[5] The U.S. Supreme Court, confronted with a similar contention, opined that

> since the legislative consideration of th[is] statute[ ] was addressed principally to matters other than that at issue here, it is our view that the failure of [the legislature] to overturn the [previous] interpretation falls far short of providing a basis to support a construction of [the statute] so clearly at odds with its plain meaning....

*Aaron v. SEC*, 446 U.S. 680, 694 n. 11, 100 S.Ct. 1945, 1955 n. 11, 64 L.Ed.2d 611 (1980)

While evidence of legislative attention to an issue followed by inaction may imply an endorsement of the *status quo*, "[i]t would require very persuasive circumstances enveloping [legislative] silence to debar this Court

from re-examining its own doctrines." *Helvering v. Hallock*, 309 U.S. 106, 119–20, 60 S.Ct. 444, 451–52, 84 L.Ed. 604 (1940). In this case, the prior interpretation in *Cannon* appears at variance with the full text of the statute.

In particular, our previous interpretation of § 2363 in *Cannon* does not appear to give effect to the last sentence of § 2363(f): "The expenses of recovery above mentioned shall be apportioned by the court between the parties as their interests appear at the time of said recovery." *See Keys v. State*, Del. Supr., 337 A.2d 18, 22 (1975) (when interpreting statute, it is necessary to "ascertain and give effect to the intention of the Legislature as expressed in the Statute itself"). This specific requirement of apportionment is a legislative direction which must be accorded significance in any reading of the entire statute.

 In determining legislative intent in this case, we find it important to give effect to the whole statute, and leave no part superfluous. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06 (1995). Section 2363(f) clearly provides that the expenses of the recovery "shall be apportioned by the court between the parties." While the sequential language of § 2363(e) may seem to imply that a three-step procedure is followed, *see Cannon*, 282 A.2d at 616, reading the two subsections in conjunction clearly indicates that the insurer is to be reimbursed "after deducting expenses of recovery," 19 *Del.C.* § 2363(e).

Finally, although the clear meaning of the statute must prevail, we note that pro rata apportionment of attorneys' fees is consistent with equity jurisprudence. *Cf. Wilmington Trust Co. v. Copeland*, Del.Supr., 33 Del. Ch. 399, 94 A.2d 703, 708 (1953) (dividing estate

---

3. This canon of construction has faced critical scholarly scrutiny. *See, e.g.*, William N. Eskridge, Jr., *Interpreting Legislative Inaction*, 87 Mich.L.Rev. 67 (1988); Richard A. Posner, *Statutory Interpretation—In the Classroom and in the Courtroom*, 50 U.Chi.L.Rev. 800, 813–14 (1983).

4. The synopsis went on to note that "prior interpretations of the Statutes (19 *Del.C.* § 2363(e) and 21 *Del.C.* § 2118(f)(1)) have produced inconsistent and confusing results."

5. It is highly unlikely that those who were disadvantaged as a class by the *Cannon* holding, *i.e.*, injured employees, organized themselves effectively to force legislative consideration of the issue. *See* William N. Eskridge, Jr., *Interpreting Legislative Inaction*, 87 Mich.L.Rev. 67, 107–08 (1988).

tax burden pro rata among beneficiaries). It is irrelevant that the right of subrogation here is statutory and "not one which is directly dependent upon historical principles of equity." *Baio v. Commercial Union Ins. Co.*, Del.Supr., 410 A.2d 502, 506 (1979) (applying 19 *Del.C.* § 2363). "[N]o matter what the form, subrogation is an equitable remedy." *Id.*

The direction of the statute that expenses are to be "apportioned ... between the parties as their interests appear," 19 *Del.C.* § 2363(f), imparts an equitable concept that neither party achieve an advantage not attributable to that party's effort in bringing about the result. Requiring Keeler to shoulder the full cost of recovery in this case yields an unfair result. He initiated and successfully completed the litigation which produced full recovery for Harford as well as himself. For Harford to step in after recovery and demand satisfaction of its lien without contributing to the effort or cost of recovery is patently unfair and at clear variance with the statutory mandate of apportionment.

### IV.

In sum, because the *Cannon* decision failed to give any significance to the language in § 2363(e) and (f) which requires apportionment of costs between insurer and employee, it must be overruled. Despite Harford's arguments to the contrary, legislative reenactment does not constrain us to follow *Cannon*, especially since that decision was contrary to the clear language of the statute.

 It is with some reluctance that we overrule *Cannon* because of our regard for the principle of *stare decisis* which imparts continuity and predictability to our law. The abandonment of established precedent, particularly in the area of statutory construction, should be exercised with caution. *LeCompte v. State*, 516 A.2d 898, 905 (1986) (Walsh, J., dissenting). But precedents, over time, may lose their acceptability and a case wrongly

decided at the inception should not preclude reconsideration simply because it is a quarter of a century old.[6]

 In view of the effect of this decision on established case law, it is necessary to define the scope of abrogation. *Duvall v. Charles Connell Roofing*, Del.Supr., 564 A.2d 1132, 1137 (1989). The ruling announced here will apply to: (1) this case; (2) any case now pending on appeal to this Court; (3) any case now pending in the Superior Court which has not yet been appealed but which may be eligible for appeal to this Court; (4) any claim for reimbursement asserted by a worker's compensation carrier pursuant to 19 *Del.C.* § 2363, after this date.

The judgment of the Superior Court is REVERSED and this case is REMANDED for proceedings consistent with this decision.

---

6. Mr. Justice Holmes' comment on the slavish adherence to precedent bears repeating:

 "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."

 Oliver Wendell Holmes, *The Path of the Law, in Collected Legal Papers* 187 (1952).