**BELL ATLANTIC–DELAWARE, INC.**
**Co–Plaintiff Below, Appellant,**

v.

**Domenic A. SAPORITO, Plaintiff Below, Appellee.**

**No. 329,2004.**

Supreme Court of Delaware.

Submitted: Jan. 19, 2005.
Decided: May 17, 2005.
Reargument Denied June 14, 2005.

J.R. Julian, P.A., Wilmington, DE, for Co–Plaintiff Below/Appellant.

Joseph J. Rhoades, Wilmington, DE, for Plantiff/Below–Appellee.

Before STEELE, Chief Justice, JACOBS, and RIDGELY, Justices.

STEELE, Chief Justice:

Bell Atlantic–Delaware Inc., now Verizon–Delaware Inc., appeals a judgment of the Superior Court ordering it to repay an employee, Appellee Domenic A. Saporito, the excess of an amount Saporito paid to satisfy a workers' compensation lien held by the company. Verizon contends that the trial judge undervalued the lien by characterizing certain payments as personal-injury protection (PIP) benefits instead of workers' compensation. In this opinion, we conclude that the subrogation rights of employers and self-insurers under Delaware's no-fault insurance and employment statutes establish a reimbursement policy that covers all payments Verizon made to Saporito, whether characterized as PIP or workers' compensation. We find that the record evidence contradicts the trial judge's conclusion that Verizon's erroneous characterization of some payments made to Saporito resulted in a waiver of Verizon's workers' compensation lien. The evidence instead compels a finding that the payments Verizon made in excess of its PIP coverage limits were in fact payments made as workers' compensation benefits. Accordingly, we reverse.

## I.

In 1997, a Lankford–Sysco Food Services Inc. vehicle collided with a workvan operated by Saporito, Verizon's employee. As employer and self-insurer, Verizon paid Saporito a combination of workers' compensation and PIP benefits. Saporito and his wife also filed a claim against Lankford in the Superior Court. Verizon joined in the lawsuit to protect its compensation lien and filed a separate action against Lankford to protect its PIP subrogation interest.

After Saporito settled his third-party tortfeasor claim against Lankford in 1999, Verizon sought reimbursement of the workers' compensation benefits it paid to Saporito from those settlement funds. Verizon claimed Saporito owed it approximately $150,000. Because Saporito disputed this amount, Verizon sought to reopen the case. The trial judge agreed, ordered discovery, and held an evidentiary hearing to determine the amount Saporito owed Verizon. The trial judge also authorized Saporito to tender, pending final valuation of any lien, an initial payment to Verizon. Shortly thereafter, Saporito sent a check to Verizon for approximately $85,000.

At the hearing, Verizon's payroll-services manager testified that the company considered all payments in excess of its PIP coverage, although variously recorded as PIP and workers' compensation, to be payments made to comply with workers' compensation benefits owed.[1] An assistant manager in risk management testified that Verizon, as a self-insurer, only provides $15,000 in PIP coverage, the statutorily required minimum.[2] The record also reflects that Saporito agreed to pay the full amount of Verizon's compensation lien out of third-party settlement funds.[3]

Following the hearing, the trial judge found that, despite the company's stated policy to provide no more PIP than the minimum $15,000 required by statute, Verizon paid Saporito $74,963.97 in PIP wage benefits, $35,438.45 in PIP medical reimbursements, and $46,299.10 in workers' compensation benefits.

Based on the evidence presented and the testimony presented, the PIP lien was resolved. And at least by December of 1999, given your [Verizon's] letter, it was paid by Lankford–Sysco totaling . . . the $9,548.30 [in National Guard PIP]. And that was settled. It's not an issue based upon your correspondence. It is also clear to me based upon records subsequently produced that the amount claimed or noted in Bell Atlantic–Verizon's records is $46,299.10, and that the balance, well, I'll consider PIP payments.[4]

The trial judge concluded that Saporito was only obligated to reimburse the Verizon's workers' compensation payments that the trial judge found remained unreimbursed after the Lankford settlement. The trial judge then ordered Verizon to repay Saporito $38,836.29, the amount Saporito prepaid Verizon in excess of the workers' compensation lien calculated by the trial judge. The trial judge also directed Verizon to pay 3.74 percent of Saporito's attorneys' fees and out-of-pocket expenses, which totaled $16,134.28. Verizon appeals, claiming that the trial judge erroneously calculated the lien amount and the company's contribution to Saporito's fees and costs.

## II.

An employee who is injured by a third party in the course of his employ-

---

1. Test. Sharon Marshall–O'Neill, Tr. at 54.

2. Test. David F. Salvucci, Tr. at 95 ("We provide other benefits such as workers' compensation. So we purchase PIP at a minimum, or reject it entirely depending on the state because we view it as extraneous.").

3. See Tr. at 165, 167.

4. Tr. at 184. The trial judge failed to note that the direct settlement with Lankford was in the exact amount of Verizon's claimed PIP coverage maximum—$15,000. He then proceeded to find, without factual support, that the entire balance of payments made, erroneously denominated PIP payments on some Verizon payment records, were somehow discharged by the settlement. We can find no factual support for this conclusion.

ment is permitted to recover workers' compensation benefits from his employer and to pursue a personal-injury action against the tortfeasor.[5] "Any recovery against [a] third party for damages resulting from personal injuries ... shall first reimburse the employer ... for any amounts paid or payable under the Workers' Compensation Act...."[6] This provision "prevent[s] the employee from receiving compensation for wage losses from a third-party tortfeasor when the losses have already been compensated through workers' compensation."[7]

◼ Beyond the workers' compensation laws, Delaware's no-fault automobile insurance regime directs that insurers providing PIP benefits are "subrogated to the rights, including claims under any workers' compensation law, of the person for whom benefits are provided, to the extent of the benefits so provided."[8] Although left undefined by statute, the term *subrogation* retains its common-law meaning, subject to statutory exceptions.[9] By enacting a no-fault compensation scheme, the General Assembly sought, among other goals, to hold tortfeasors liable by granting the insurer a subrogation right.[10] Self-insurers possess equal subrogation rights.[11] On appeal from a judgment in a nonjury case, the Court accepts the trial judge's factual findings so long as they are supported by the record.[12]

## III.

◼ Despite the testimony presented at the hearing, the parties dispute the scope of reimbursement due Verizon, premising their arguments on conflicting statements made in correspondence between the two. Verizon claims that, based on its company policy to provide no more than the statutory minimum PIP coverage, it could only directly recoup $15,000 in PIP reimbursement from Lankford, and that any additional payments must be considered workers' compensation. That explains why Verizon admittedly settled with Lankford, the third-party tortfeasor, for $15,000, the maximum recoverable reimbursement for PIP benefits Verizon paid Saporito. Verizon also contends that, regardless of the label assigned, Saporito knew that Verizon's settlement with Lankford did not include the additional payments Verizon claimed to be workers' compensation. Saporito counters that Verizon made clear in its correspondence that the payments Verizon paid Saporito above $15,000 were PIP benefits.

### A. *The No–Fault Insurance and Employment Statutes*

Although he found no evidence to support the proposition that Verizon "voluntarily and actually assumed greater liability for PIP coverage than the

**5.** *Duphily v. Delaware Elec. Coop. Inc.*, 662 A.2d 821, 834 (Del.1995).

**6.** 19 *Del. C.* § 2363(e).

**7.** *State v. Calhoun*, 634 A.2d 335, 337 (Del. 1993).

**8.** 21 *Del. C.* § 2118(g).

**9.** *Waters v. United States*, 787 A.2d 71, 73 (Del.2001). *See also* DAN B. DOBBS, LAW OF REMEDIES § 4.3 (2d ed. 1993) ("Subrogation simply means substitution of one person for another.... Factually, the case arises be-

cause, for some justifiable reason, the subrogation plaintiff has paid a debt owed by the defendant.").

**10.** *Nationwide Mut. Ins. Co. v. Wooters*, 1996 WL 280778, 1996 Del.Super. Lexis 113, *aff'd* 682 A.2d 628 (Del.1996).

**11.** 21 *Del. C.* § 2118(g)(6).

**12.** *Ingram v. Heiman, Aber & Goldlust*, 748 A.2d 913 (Del.2000).

minimum required and mandated by statute,"[13] the trial judge ultimately concluded that Saporito was not responsible for Verizon's ambiguous record-keeping because by settling with Lankford directly for PIP payments made, Verizon waived its entitlement to pursue additional PIP reimbursement from Saporito. In essence, because the company failed to expressly identify the additional payments as workers' compensation but instead erroneously referred to them as PIP despite the company's clear policy to the contrary, the trial judge rejected Verizon's claim that any payments beyond the PIP $15,000 statutory minimum were made as workers' compensation benefits.

Delaware law, however, belies this conclusion. When read together, Delaware's no-fault insurance and workers' compensation schemes cover the lien universe: they establish a policy of employer and insurer reimbursement for accident-related payments when the employee-policyholder recovers from a third-party tortfeasor. To allow a recording error—characterizing excess payments as PIP instead of workers' compensation—to trump this policy would prevent reimbursement to the employer-insurer contrary to the subrogation rights secured by the respective statutes. The trial judge's reluctance to enforce Verizon's subrogation rights gives Saporito a windfall by allowing him to keep the full amount recovered from the third-party tortfeasor and by denying Verizon the right to reimbursement for the compensation benefits it paid to Saporito. Saporito's double recovery is not only an inequitable result, it contravenes both the text of and policy behind Delaware's insurance and labor statutes. Regardless of how these payments are characterized, disallowing reimbursement is a statutorily untenable outcome on this record.

## B. The Excess Payments

Under our no-fault insurance system, Verizon's PIP subrogation right extends only to the third-party tortfeasor, Lankford, and not to Saporito himself. Verizon settled with Lankford for $15,000, its maximum PIP coverage. As a result, the balance of the payments Verizon made to Saporito were workers' compensation benefits that constituted a lien against Saporito's recovery from Lankford. The evidence presented supports the company's claim that its excess payments were workers' compensation benefits.

Verizon's witnesses testified about both the company's PIP coverage policy and its PIP and workers' compensation payment practices. Verizon's risk-management specialist stated that because it "provide[s] other benefits such as workers' compensation," the company purchases PIP "at a minimum."[14] Verizon's payroll manager stated:

> The payments were made as workers' comp[ensation], but they were made in PIP payment. But the supplemental register has workers' comp[ensation] stated on there.... There's no programming or no identifying in the system to say this is a PIP payment. So it was paid under workers' comp[ensation].[15]

Where the company's records equivocate, the manager is clear. She expressly characterized the payments as workers' compensation benefits.

The Verizon–Lankford settlement circumstances independently support the

---

13. Tr. at 142.

14. Tr. at 95.

15. Tr. at 54.

manager's testimony. Verizon followed its self-insurance scheme by immediately settling its PIP subrogation claim against Lankford for $15,000, a figure that matches the statutory minimum, the company's avowed coverage maximum for PIP. That the settlement amount mirrors the PIP coverage maximum the company's representatives testified to indicates that Verizon never intended any payments in excess of $15,000 to be PIP payments. If so, they would be payments to discharge benefit obligations not extended to Saporito. Saporito, however, nonetheless remains entitled, after exhaustion of PIP limits, to workers' compensation benefits.

Absent a different settlement figure, or other indicia that a larger PIP subrogation claim had been reduced through negotiation to $15,000, recordkeeping error or confusion alone cannot justify the trial judge's finding that Verizon paid Saporito PIP benefits exceeding its declared coverage maximum. Indeed, the trial judge himself virtually admitted that neither the record supported nor did logic confirm his ultimate, speculative conclusion to award Saporito a double recovery:

> For the Court to uphold [Saporito's] position, the Court would have to find that Bell Atlantic–Delaware ... voluntarily and actually assumed greater liability for PIP coverage than the minimum required and mandated by statute. And there's no evidence in this case that that happened.[16]

The stated PIP coverage, the maximum settlement for $15,000 with Lankford, and

the testimonial evidence all demand a finding that the payments Verizon made to Saporito in excess of its $15,000 PIP policy were workers' compensation benefits. On this record, Saporito's windfall—allowing him to insulate his recovery from Lankford from the payments in excess of $15,000 erroneously documented as PIP thus resulting in a double recovery—is not supported by the record and is contrary to statutory public policy.[17]

## IV.

Verizon next argues that the trial judge, irrespective of the base amount of the workers' compensation lien, abused his discretion by ordering it to pay 3.74 percent of Saporito's attorneys' fees and out-of-pocket expenses. Under our holding in *Keeler v. Harford Mutual Insurance Company*, "not requiring workers' compensation carriers to bear part of the cost of third party tort litigation where recovery results in reimbursement of benefits is inequitable and contrary to the language of the [apportionment] statute."[18] We review the assessment of attorneys' fees and costs for abuse of discretion.[19]

Verizon contends that the trial judge erred in applying *Keeler* when he failed to examine or review the amount of time and effort that Verizon's counsel contributed to the third-party action. The present record, however, establishes otherwise. The record shows that the trial judge specifically addressed Verizon's assistance in the third-party action, and properly concluded

16. Tr. at 142.

17. Although the present record may raise equitable issues inferentially, the parties did not frame their arguments in that manner, either before the trial judge or this Court. *See* SUPR. CT. R. 8. Because our conclusions here are shaped by the legal principles set forth by statute, we decline to address *sua sponte* any equitable theory of relief.

18. *Keeler v. Harford Mut. Ins. Co.*, 672 A.2d 1012, 1014 (Del.1996), *citing* 19 *Del. C.* § 2363(f).

19. *Roadway Express v. Folk*, 817 A.2d 772, 776 (Del.2003).

that Verizon's counsel was involved to a limited extent before the Lankford settlement. Our reversal of the lien calculation does not implicate the trial judge's analysis on this issue. Accordingly, we find no abuse of discretion in the trial judge's determining of the percentage of fees to be paid by Verizon.

## V.

Because the evidence presented demonstrates that Verizon intended all payments to Saporito recovered from Lankford in excess of its maximum PIP coverage to be workers' compensation payments, and because Delaware employment and labor law favors the policy of reimbursing employer and insurer accident-related payments from third-party settlement proceeds, the trial judge's finding that Verizon paid Saporito only $46,299.10 in workers' compensation benefits is unsupported by the record. Accordingly, that judgment of the Superior Court is **REVERSED** and **REMANDED.** The judgment awarding fees and costs to Saporito is **AFFIRMED** with instructions to enter final judgment consistent with this Opinion.