**CA, INC., a Delaware corporation, Petitioner Below, Appellant,**

v.

**AFSCME EMPLOYEES PENSION PLAN, Respondent Below, Appellee.**

No. 329, 2008.

Supreme Court of Delaware.

Submitted: July 9, 2008.
Decided: July 17, 2008.
Modified: Aug. 15, 2008.

14. *Id.*

Raymond J. DiCamillo, Blake Rohrbacher, and Scott W. Perkins, Esquires, of Richards, Layton & Finger, P.A., Wilmington, Delaware; of Counsel: Robert J. Giuffra, Jr. (argued), David B. Harms, William B. Monahan, and William H. Wagener, Esquires, of Sullivan & Cromwell LLP, New York, New York; for Appellant.

Jay W. Eisenhofer, Stuart M. Grant, Michael J. Barry (argued), and Ananda Chaudhuri, Esquires, of Grant & Eisenhofer P.A., Wilmington, Delaware; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice.

This proceeding arises from a certification by the United States Securities and Exchange Commission (the "SEC"), to this Court, of two questions of law pursuant to Article IV, Section 11(8) of the Delaware Constitution[1] and Supreme Court Rule 41. On June 27, 2008, the SEC asked this Court to address two questions of Delaware law regarding a proposed stockholder bylaw submitted by the AFSCME Employees Pension Plan ("AFSCME") for inclusion in the proxy materials of CA, Inc. ("CA" or the "Company") for CA's 2008 annual stockholders' meeting. This Court accepted certification on July 1, 2008, and after expedited briefing, the matter was argued on July 9, 2008. This is the decision of the Court on the certified questions.

## I. FACTS

CA is a Delaware corporation whose board of directors consists of twelve persons, all of whom sit for reelection each year. CA's annual meeting of stockholders is scheduled to be held on September 9, 2008. CA intends to file its definitive proxy materials with the SEC on or about July 24, 2008 in connection with that meeting.

AFSCME, a CA stockholder, is associated with the American Federation of State, County and Municipal Employees. On March 13, 2008, AFSCME submitted a proposed stockholder bylaw (the "Bylaw" or "proposed Bylaw") for inclusion in the Company's proxy materials for its 2008 annual meeting of stockholders. The Bylaw, if adopted by CA stockholders, would amend the Company's bylaws to provide as follows:

> RESOLVED, that pursuant to section 109 of the Delaware General Corporation Law and Article IX of the bylaws of CA, Inc., stockholders of CA hereby amend the bylaws to add the following Section 14 to Article II:

---

1. Article IV, Section 11(8) was amended in 2007 to authorize this Court to hear and determine questions of law certified to it by (in addition to the tribunals already specified therein) the United States Securities and Exchange Commission. 76 *Del. Laws* 2007, ch. 37 § 1, effective May 3, 2007. This certification request is the first submitted by the SEC to this Court.

The board of directors shall cause the corporation to reimburse a stockholder or group of stockholders (together, the "Nominator") for reasonable expenses ("Expenses") incurred in connection with nominating one or more candidates in a contested election of directors to the corporation's board of directors, including, without limitation, printing, mailing, legal, solicitation, travel, advertising and public relations expenses, so long as (a) the election of fewer than 50% of the directors to be elected is contested in the election, (b) one or more candidates nominated by the Nominator are elected to the corporation's board of directors, (c) stockholders are not permitted to cumulate their votes for directors, and (d) the election occurred, and the Expenses were incurred, after this bylaw's adoption. The amount paid to a Nominator under this bylaw in respect of a contested election shall not exceed the amount expended by the corporation in connection with such election.

CA's current bylaws and Certificate of Incorporation have no provision that specifically addresses the reimbursement of proxy expenses. Of more general relevance, however, is Article SEVENTH, Section (1) of CA's Certificate of Incorporation, which tracks the language of 8 *Del. C.* § 141(a) and provides that:

The management of the business and the conduct of the affairs of the corporation shall be vested in [CA's] Board of Directors.

It is undisputed that the decision whether to reimburse election expenses is presently vested in the discretion of CA's board of directors, subject to their fiduciary duties and applicable Delaware law.

On April 18, 2008, CA notified the SEC's Division of Corporation Finance (the "Division") of its intention to exclude the proposed Bylaw from its 2008 proxy materials. The Company requested from the Division a "no-action letter" stating that the Division would not recommend any enforcement action to the SEC if CA excluded the AFSCME proposal.[2] CA's request for a no-action letter was accompanied by an opinion from its Delaware counsel, Richards Layton & Finger, P.A. ("RL & F"). The RL & F opinion concluded that the proposed Bylaw is not a proper subject for stockholder action, and that if implemented, the Bylaw would violate the Delaware General Corporation Law ("DGCL").

On May 21, 2008, AFSCME responded to CA's no-action request with a letter taking the opposite legal position. The AFSCME letter was accompanied by an opinion from AFSCME's Delaware counsel, Grant & Eisenhofer, P.A. ("G & E"). The G & E opinion concluded that the proposed Bylaw is a proper subject for shareholder action and that if adopted, would be permitted under Delaware law.

The Division was thus confronted with two conflicting legal opinions on Delaware law. Whether or not the Division would determine that CA may exclude the proposed Bylaw from its 2008 proxy materials would depend upon which of these conflicting views is legally correct. To obtain guidance, the SEC, at the Division's request, certified two questions of Delaware law to this Court. Given the short timeframe for the filing of CA's proxy materi-

**2.** Under Sections (i)(1) and (i)(2) of SEC Rule 14a–8, a company may exclude a stockholder proposal from its proxy statement if the proposal "is not a proper subject for action by the shareholders under the laws of the jurisdiction of the company's organization," or where the proposal, if implemented, "would cause the company to violate any state law to which it is subject." *See* 17 C.F.R. § 240.14a–8.

als, we concluded that "there are important and urgent reasons for an immediate determination of the questions certified," and accepted those questions for review on July 1, 2008.

## II. *THE CERTIFIED QUESTIONS*

The two questions certified to us by the SEC are as follows:

1. Is the AFSCME Proposal a proper subject for action by shareholders as a matter of Delaware law?

2. Would the AFSCME Proposal, if adopted, cause CA to violate any Delaware law to which it is subject?

■ The questions presented are issues of law which this Court decides *de novo*.[3]

## III. *THE FIRST QUESTION*

### A. *Preliminary Comments*

■ The first question presented is whether the Bylaw is a proper subject for shareholder action, more precisely, whether the Bylaw may be proposed and enacted by shareholders without the concurrence of the Company's board of directors. Before proceeding further, we make some preliminary comments in an effort to delineate a framework within which to begin our analysis.

*First*, the DGCL empowers both the board of directors and the shareholders of a Delaware corporation to adopt, amend or repeal the corporation's bylaws. 8 *Del. C.* § 109(a) relevantly provides that:

After a corporation has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall

be in the stockholders entitled to vote ...; provided, however, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors.... The fact that such power has been so conferred upon the directors ... shall not divest the stockholders ... of the power, nor limit their power to adopt, amend or repeal bylaws.

Pursuant to Section 109(a), CA's Certificate of Incorporation confers the power to adopt, amend or repeal the bylaws upon the Company's board of directors.[4] Because the statute commands that that conferral "shall not divest the stockholders ... of ... nor limit" their power, both the board and the shareholders of CA, independently and concurrently, possess the power to adopt, amend and repeal the bylaws.

*Second*, the vesting of that concurrent power in both the board and the shareholders raises the issue of whether the stockholders' power is coextensive with that of the board, and vice versa. As a purely theoretical matter that is possible, and were that the case, then the first certified question would be easily answered. That is, under such a regime any proposal to adopt, amend or repeal a bylaw would be a proper subject for either shareholder or board action, without distinction. But the DGCL has not allocated to the board and the shareholders the identical, coextensive power to adopt, amend and repeal the bylaws. Therefore, how that power is allocated between those two decision-making bodies requires an analysis that is more complex.

3. *B.F. Rich & Co., Inc. v. Gray*, 933 A.2d 1231, 1241 (Del.2007).

4. Article SEVENTH Section (2) of CA's Certificate of Incorporation provides that "[t]he original By Laws of the corporation shall be adopted by the incorporator. Thereafter, the power to make, alter, or repeal the By Laws, and to adopt any new By Law, except a By Law classifying directors for election for staggered terms, shall be vested in the Board of Directors."

Moving from the theoretical to this case, by its terms Section 109(a) vests in the shareholders a power to adopt, amend or repeal bylaws that is legally sacrosanct, *i.e.*, the power cannot be non-consensually eliminated or limited by anyone other than the legislature itself. If viewed in isolation, Section 109(a) could be read to make the board's and the shareholders' power to adopt, amend or repeal bylaws identical and coextensive, but Section 109(a) does not exist in a vacuum. It must be read together with 8 *Del. C.* § 141(a), which pertinently provides that:

> The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation.[5]

■ No such broad management power is statutorily allocated to the shareholders. Indeed, it is well-established that stockholders of a corporation subject to the DGCL may not directly manage the business and affairs of the corporation, at least without specific authorization in either the statute or the certificate of incorporation.[6] Therefore, the shareholders' statutory power to adopt, amend or repeal bylaws is not coextensive with the board's concurrent power and is limited by the board's management prerogatives under Section 141(a).[7]

*Third,* it follows that, to decide whether the Bylaw proposed by AFSCME is a proper subject for shareholder action under Delaware law, we must first determine: (1) the scope or reach of the shareholders' power to adopt, alter or repeal the bylaws of a Delaware corporation, and then (2) whether the Bylaw at issue here falls within that permissible scope. Where, as here, the proposed bylaw is one that limits director authority, that is an elusively difficult task. As one noted scholar has put it, "the efforts to distinguish by-laws that permissibly limit director authority from by-laws that impermissibly do so have failed to provide a coherent analytical structure, and the pertinent statutes provide no guidelines for distinction at all."[8] The tools that are

---

5. As earlier noted, CA's Certificate of Incorporation fully empowers the board of directors, in language that tracks Section 141(a), to manage the business and affairs of the Company.

6. *See, e.g., McMullin v. Beran,* 765 A.2d 910, 916 (Del.2000) ("[o]ne of the fundamental principles of the Delaware General Corporation Law statute is that the business affairs of a corporation are managed by or under the direction of its board of directors."); *Quickturn Design Sys., Inc. v. Shapiro,* 721 A.2d 1281, 1291–92 (Del.1998) ("One of the most basic tenets of Delaware corporate law is that the board of directors has the ultimate responsibility for managing the business and affairs of a corporation. [ ... ] Section 141(a) ... confers upon any newly elected board of directors *full* power to manage and direct the business and affairs of a Delaware corporation.") (emphasis in original) (internal citations omitted); *Aronson v. Lewis,* 473 A.2d 805, 811 (Del.1984) ("[a] cardinal precept of

the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation.").

7. Because the board's managerial authority under Section 141(a) is a cardinal precept of the DGCL, we do not construe Section 109 as an "except[ion] ... otherwise specified in th[e] [DGCL]" to Section 141(a). Rather, the shareholders' statutory power to adopt, amend or repeal bylaws under Section 109 cannot be "inconsistent with law," including Section 141(a).

8. Lawrence A. Hamermesh, *Corporate Democracy and Stockholder–Adopted By–Laws: Taking Back the Street?*, 73 TUL. L.REV. 409, 444 (1998); *Id.* at 416 (noting that "neither the courts, the legislators, the SEC, nor legal scholars have clearly articulated the means of ... determining whether a stockholder-adopted by-law provision that constrains di-

available to this Court to answer those questions are other provisions of the DGCL[9] and Delaware judicial decisions that can be brought to bear on this question.

## B. *Analysis*

### 1.

Two other provisions of the DGCL, 8 *Del. C.* §§ 109(b) and 102(b)(1), bear importantly on the first question and form the basis of contentions advanced by each side. Section 109(b), which deals generally with bylaws and what they must or may contain, provides that:

> The bylaws may contain any provision, not inconsistent with law or with the certificate of incorporation, relating to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.

And Section 102(b)(1), which is part of a broader provision that addresses what the certificate of incorporation must or may contain, relevantly states that:

> (b) In addition to the matters required to be set forth in the certificate of incorporation by subsection (a) of this section, the certificate of incorporation may also contain any or all of the following matters:
>
> (1) Any provision for the management of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class of the stockholders ....; if such provisions are not contrary to the laws of this State. Any provision which is required or permitted by any section of this chapter to be stated in the bylaws may instead be stated in the certificate of incorporation.

AFSCME relies heavily upon the language of Section 109(b), which permits the bylaws of a corporation to contain "any provision ... relating to the ... rights or powers of its stockholders [and] directors...." The Bylaw, AFSCME argues, "relates to" the right of the stockholders meaningfully to participate in the process of electing directors, a right that necessarily "includes the right to nominate an opposing slate."[10]

■ CA argues, in response, that Section 109(b) is not dispositive, because it cannot be read in isolation from, and without regard to, Section 102(b)(1). CA's ar-

---

rector managerial authority is legally effective."). *See also* Randall S. Thomas & Catherine T. Dixon, Aranow & Einhorn on Proxy Contests for Corporate Control, § 160.5 (3d ed. 1998) ("At some point the broad shareholder power to adopt or amend corporate by-laws must yield to the board's plenary authority to manage the business and affairs of the corporation.... The difficulty of pinpointing where a proposal falls on this spectrum of sometimes overlapping authority is exacerbated by the absence of state-law precedent demarcating this boundary."); John C. Coffee, Jr., *The SEC and the Institutional Investor: A Half–Time Report*, 15 Cardozo L.Rev. 837, 889 (1994) ("Symptomatically, persuasive Delaware authority is simply lacking that draws boundaries between the shareholder's right to amend the bylaws and the board's right to manage."); William W. Bratton & Joseph A.

McCahery, *Regulatory Competition, Regulatory Capture, and Corporate Self–Regulation*, 73 N.C. L.Rev. 1861, 1932 n. 274 (1995) ("[S]tate lawmakers have never had occasion to draw a clear line between board management authority and shareholder by-law promulgation authority. As a result, the extent to which a by-law may constrain ... management authority is not clear.").

9. *Keeler v. Harford Mut. Ins. Co.*, 672 A.2d 1012, 1016 (Del.1996) ("In determining legislative intent ... we find it important to give effect to the whole statute, and leave no part superfluous.").

10. *Harrah's Entm't v. JCC Holding Co.*, 802 A.2d 294, 310 (Del.Ch.2002).

gument runs as follows: the Bylaw would limit the substantive decision-making authority of CA's board to decide whether or not to expend corporate funds for a particular purpose, here, reimbursing director election expenses. Section 102(b)(1) contemplates that any provision that limits the broad statutory power of the directors must be contained in the certificate of incorporation.[11] Therefore, the proposed Bylaw can only be in CA's Certificate of Incorporation, as distinguished from its bylaws. Accordingly, the proposed bylaw falls outside the universe of permissible bylaws authorized by Section 109(b).[12]

■ Implicit in CA's argument is the premise that *any* bylaw that in *any* respect might be viewed as limiting or restricting the power of the board of directors automatically falls outside the scope of permissible bylaws. That simply cannot be. That reasoning, taken to its logical extreme, would result in eliminating altogether the shareholders' statutory right to adopt, amend or repeal bylaws. Bylaws, by their very nature, set down rules and procedures that bind a corporation's board and its shareholders. In that sense, most, if not all, bylaws could be said to limit the otherwise unlimited discretionary power of the board. Yet Section 109(a) carves out an area of shareholder power to adopt, amend or repeal bylaws

that is expressly inviolate.[13] Therefore, to argue that the Bylaw at issue here limits the board's power to manage the business and affairs of the Company only begins, but cannot end, the analysis needed to decide whether the Bylaw is a proper subject for shareholder action. The question left unanswered is what is the scope of shareholder action that Section 109(b) permits yet does not improperly intrude upon the directors' power to manage corporation's business and affairs under Section 141(a).

It is at this juncture that the statutory language becomes only marginally helpful in determining what the Delaware legislature intended to be the lawful scope of the shareholders' power to adopt, amend and repeal bylaws. To resolve that issue, the Court must resort to different tools, namely, decisions of this Court and of the Court of Chancery that bear on this question. Those tools do not enable us to articulate with doctrinal exactitude a bright line that divides those bylaws that shareholders may unilaterally adopt under Section 109(b) from those which they may not under Section 141(a). They do, however, enable us to decide the issue presented in this specific case.[14]

### 2.

It is well-established Delaware law that a proper function of bylaws is not to man-

---

**11.** 8 *Del. C.* § 102(b)(1) pertinently provides that the "the certificate of incorporation may also contain ... any provision ... limiting ... the powers of ... the directors."

**12.** Although CA advances this argument in its Brief in connection with the second question, *i.e.*, as a reason why the Bylaw, if adopted, would violate Delaware law, we view the argument as also properly bearing upon the first question, namely, whether the proposed Bylaw is a proper subject for shareholder action.

**13.** Section 109(a), to reiterate, provides that the fact that the certificate of incorporation

confers upon the directors the power to adopt, amend or repeal bylaws "shall not divest the stockholders ... of the power ..., nor limit their power to adopt, amend or repeal bylaws."

**14.** We do not attempt to delineate the location of that bright line in this Opinion. What we do hold is case specific; that is, wherever may be the location of the bright line that separates the shareholders' bylaw-making power under Section 109 from the directors' exclusive managerial authority under Section 141(a), the proposed Bylaw at issue here does not invade the territory demarcated by Section 141(a).

date how the board should decide specific substantive business decisions, but rather, to define the process and procedures by which those decisions are made. As the Court of Chancery has noted:

> Traditionally, the bylaws have been the corporate instrument used to set forth the rules by which the corporate board conducts its business. To this end, the DGCL is replete with specific provisions authorizing the bylaws to establish the procedures through which board and committee action is taken.... [T]here is a general consensus that bylaws that regulate the process by which the board acts are statutorily authorized.[15]

\* \* \*

... I reject International's argument that that provision in the Bylaw Amendments impermissibly interferes with the board's authority under § 141(a) to manage the business and affairs of the corporation. Sections 109 and 141, taken in totality, .... make clear that bylaws may pervasively and strictly regulate the process by which boards act, subject to the constraints of equity.[16]

Examples of the procedural, process-oriented nature of bylaws are found in both the DGCL and the case law. For example, 8 *Del. C.* § 141(b) authorizes bylaws that fix the number of directors on the board, the number of directors required for a quorum (with certain limitations), and the vote requirements for board action. 8 *Del. C.* § 141(f) authorizes bylaws that preclude board action without a meeting.[17] And, almost three decades ago this Court upheld a shareholder-enacted bylaw requiring unanimous board attendance and board approval for any board action, and unanimous ratification of any committee action.[18] Such purely procedural bylaws do not improperly encroach upon the board's managerial authority under Section 141(a).

The process-creating function of bylaws provides a starting point to address the Bylaw at issue. It enables us to frame the issue in terms of whether the Bylaw is one that establishes or regulates a process for substantive director decision-making, or one that mandates the decision itself. Not surprisingly, the parties sharply divide on that question. We conclude that the Bylaw, even though infelicitously couched as

---

15. *Hollinger Intern., Inc. v. Black*, 844 A.2d 1022, 1078–79 (Del.Ch.2004) (internal footnotes omitted), *aff'd*, 872 A.2d 559 (Del.2005). *See also, Gow v. Consol. Coppermines Corp.*, 165 A. 136, 140 (Del.Ch.1933) ("[A]s the charter is an instrument in which the broad and general aspects of the corporate entity's existence and nature are defined, so the by-laws are generally regarded as the proper place for the self-imposed rules and regulations deemed expedient for its convenient functioning to be laid down.").

16. *Id.* at 1080 n. 136.

17. *See also, e.g.*, 8 *Del. C.* § 211(a) & (b) (bylaws may establish the date and the place of the annual meeting of the stockholders); § 211(d) (bylaws may specify the conditions for the calling of special meetings of stockholders); § 216 (bylaws may establish quorum and vote requirements for meetings of stockholders and "[a] bylaw amendment adopted by stockholders which specifies the votes that shall be necessary for the election of directors shall not be further amended or repealed by the board of directors."); § 222 (bylaws may regulate certain notice requirements regarding adjourned meetings of stockholders).

18. *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401 (Del.1985). *See also Hollinger*, 844 A.2d at 1079–80 (shareholder-enacted bylaw abolishing a board committee created by board resolution does not impermissibly interfere with the board's authority under Section 141(a)).

a substantive-sounding mandate to expend corporate funds, has both the intent and the effect of regulating the process for electing directors of CA. Therefore, we determine that the Bylaw is a proper subject for shareholder action, and set forth our reasoning below.

Although CA concedes that "restrictive procedural bylaws (such as those requiring the presence of all directors and unanimous board consent to take action) are acceptable," it points out that even facially procedural bylaws can unduly intrude upon board authority. The Bylaw being proposed here is unduly intrusive, CA claims, because, by mandating reimbursement of a stockholder's proxy expenses, it limits the board's broad discretionary authority to decide whether to grant reimbursement at all. CA further claims that because (in defined circumstances) the Bylaw mandates the expenditure of corporate funds, its subject matter is necessarily substantive, not process-oriented, and, therefore falls outside the scope of what Section 109(b) permits.[19]

Because the Bylaw is couched as a command to reimburse ("The board of directors shall cause the corporation to reimburse a stockholder"), it lends itself to CA's criticism. But the Bylaw's wording, although relevant, is not dispositive of whether or not it is process-related. The Bylaw could easily have been worded differently, to emphasize its process, as distinguished from its mandatory payment, component.[20] By saying this we do not mean to suggest that this Bylaw's reimbursement component can be ignored. What we do suggest is that a bylaw that requires the expenditure of corporate funds does not, for that reason alone, become automatically deprived of its process-related character. A hypothetical example illustrates the point. Suppose that the directors of a corporation live in different states and at a considerable distance from the corporation's headquarters. Suppose also that the shareholders enact a bylaw that requires all meetings of directors to take place in person at the corporation's headquarters. Such a bylaw would be clearly process-related, yet it cannot be supposed that the shareholders would lack the power to adopt the bylaw because it would require the corporation to expend its funds to reimburse the directors' travel expenses. Whether or not a bylaw is pro-

---

**19.** CA actually conflates two separate arguments that, although facially similar, are analytically distinct. The first argument is that the Bylaw impermissibly intrudes upon board authority because it mandates the expenditure of corporate funds. The second is that the Bylaw impermissibly leaves no role for board discretion and would require reimbursement of the costs of a subset of CA's stockholders, even in circumstances where the board's fiduciary duties would counsel otherwise. Analytically, the first argument is relevant to the issue of whether the Bylaw is a proper subject for unilateral stockholder action, whereas the second argument more properly goes to the separate question of whether the Bylaw, if enacted, would violate Delaware law.

**20.** For example, the Bylaw could have been phrased more benignly, to provide that "[a] stockholder or group of stockholders (together, the 'Nominator') shall be entitled to reimbursement from the corporation for reasonable expenses ('Expenses') incurred in connection with nominating one or more candidates in a contested election of directors to the corporation's board of directors in the following circumstances...." Although the substance of the Bylaw would be no different, the emphasis would be upon the shareholders' entitlement to reimbursement, rather than upon the directors' obligation to reimburse. As discussed in Part IV, *infra*, of this Opinion, in order for the Bylaw not to be "not inconsistent with law" as Section 109(b) mandates, it would also need to contain a provision that reserves the directors' full power to discharge their fiduciary duties.

cess-related must necessarily be determined in light of its context and purpose.

The context of the Bylaw at issue here is the process for electing directors—a subject in which shareholders of Delaware corporations have a legitimate and protected interest.[21] The purpose of the Bylaw is to promote the integrity of that electoral process by facilitating the nomination of director candidates by stockholders or groups of stockholders. Generally, and under the current framework for electing directors in contested elections, only board-sponsored nominees for election are reimbursed for their election expenses. Dissident candidates are not, unless they succeed in replacing at least a majority of the entire board. The Bylaw would encourage the nomination of non-management board candidates by promising reimbursement of the nominating stockholders' proxy expenses if one or more of its candidates are elected. In that the shareholders also have a legitimate interest, because the Bylaw would facilitate the exercise of their right to participate in selecting the contestants. The Court of Chancery has so recognized:

> [T]he unadorned right to cast a ballot in a contest for [corporate] office ... is meaningless without the right to participate in selecting the contestants. As the nominating process circumscribes the range of choice to be made, it is a

fundamental and outcome-determinative step in the election of officeholders. To allow for voting while maintaining a closed selection process thus renders the former an empty exercise.[22]

\* \* \*

The shareholders of a Delaware corporation have the right "to participate in selecting the contestants" for election to the board. The shareholders are entitled to facilitate the exercise of that right by proposing a bylaw that would encourage candidates other than board-sponsored nominees to stand for election. The Bylaw would accomplish that by committing the corporation to reimburse the election expenses of shareholders whose candidates are successfully elected. That the implementation of that proposal would require the expenditure of corporate funds will not, in and of itself, make such a bylaw an improper subject matter for shareholder action. Accordingly, we answer the first question certified to us in the affirmative.

That, however, concludes only part of the analysis. The DGCL also requires that the Bylaw be "not inconsistent with law."[23] Accordingly, we turn to the second certified question, which is whether the proposed Bylaw, if adopted, would cause CA to violate any Delaware law to which it is subject.

---

21. *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 660 n. 2 (Del.Ch.1988) ("Delaware courts have long exercised a most sensitive and protective regard for the free and effective exercise of voting rights."); *Id.* at 659 ("[W]hen viewed from a broad, institutional perspective, it can be seen that matters involving the integrity of the shareholder voting process involve consideration[s] not present in any other context in which directors exercise delegated power."); *See also Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1378 (Del. 1995); *MM Cos., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118 (Del.2003); and 8 *Del. C.*

§ 211 (authorizing a shareholder to petition the Court of Chancery to order a meeting of stockholders to elect directors where such a meeting has not been held for at least 13 months).

22. *Harrah's Entm't v. JCC Holding Co.*, 802 A.2d 294, 311 (Del.Ch.2002) (quoting *Durkin v. Nat'l Bank of Olyphant*, 772 F.2d 55, 59 (3d Cir.1985)).

23. 8 *Del. C.* § 109(b).

## IV. *THE SECOND QUESTION*

█ In answering the first question, we have already determined that the Bylaw does not facially violate any provision of the DGCL or of CA's Certificate of Incorporation. The question thus becomes whether the Bylaw would violate any common law rule or precept. Were this issue being presented in the course of litigation involving the application of the Bylaw to a specific set of facts, we would start with the presumption that the Bylaw is valid and, if possible, construe it in a manner consistent with the law.[24] The factual context in which the Bylaw was challenged would inform our analysis, and we would "exercise caution [before] invalidating corporate acts based upon hypothetical injuries...."[25] The certified questions, however, request a determination of the validity of the Bylaw in the abstract. Therefore, in response to the second question, we must necessarily consider any possible circumstance under which a board of directors might be required to act. Under at least one such hypothetical, the board of directors would breach their fiduciary duties if they complied with the Bylaw. Accordingly, we conclude that the Bylaw, as drafted, would violate the prohibition, which our decisions have derived from Section 141(a), against contractual arrangements that commit the board of directors to a course of action that would preclude them from fully discharging their fiduciary duties to the corporation and its shareholders.[26]

This Court has previously invalidated contracts that would require a board to act or not act in such a fashion that would limit the exercise of their fiduciary duties. In *Paramount Communications, Inc. v. QVC Network, Inc.*,[27] we invalidated a "no shop" provision of a merger agreement with a favored bidder (Viacom) that prevented the directors of the target company (Paramount) from communicating with a competing bidder (QVC) the terms of its competing bid in an effort to obtain the highest available value for shareholders. We held that:

> The No–Shop Provision could not validly define or limit the fiduciary duties of the Paramount directors. To the extent that a contract, or a provision thereof, purports to require a board to act or not act in such a fashion as to limit the exercise of fiduciary duties, it is invalid and unenforceable. [ ... ] [T]he Paramount directors could not contract away their fiduciary obligations. Since the No–Shop Provision was invalid, Viacom never had any vested contract rights in the provision.[28]

Similarly, in *Quickturn Design Systems, Inc. v. Shapiro*,[29] the directors of the target company (Quickturn) adopted a "poison pill" rights plan that contained a so-called "delayed redemption provision" as a defense against a hostile takeover bid, as part of which the bidder (Mentor Graphics) intended to wage a proxy contest to replace the target company board. The delayed redemption provision was intended to deter that effort, by preventing any

**24.** *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del.1985).

**25.** *Stroud v. Grace*, 606 A.2d 75, 79 (Del. 1992).

**26.** *Paramount Communications, Inc. v. QVC Network, Inc.*, 637 A.2d 34 (Del.1994); *Quick-*

*turn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281 (Del.1998).

**27.** 637 A.2d 34 (Del.1994).

**28.** *Paramount v. QVC*, 637 A.2d at 51.

**29.** 721 A.2d 1281 (Del.1998).

newly elected board from redeeming the poison pill for six months. This Court invalidated that provision, because it would "impermissibly deprive any newly elected board of both its statutory authority to manage the corporation under 8 *Del. C.* § 141(a) and its concomitant fiduciary duty pursuant to that statutory mandate."[30] We held that:

> One of the most basic tenets of Delaware corporate law is that the board of directors has the ultimate responsibility for managing the business and affairs of a corporation. [ ... ] The Quickturn certificate of incorporation contains no provision purporting to limit the authority of the board in any way. The Delayed Redemption Provision, however, would prevent a newly elected board of directors from *completely* discharging its fundamental management duties to the corporation and its stockholders for six months. While the Delayed Redemption Provision limits the board of directors' authority in only one respect, the suspension of the Rights Plan, it nonetheless restricts the board's power in an area of fundamental importance to the shareholders—negotiating a possible sale of the corporation. Therefore, we hold that the Delayed Redemption Provision is invalid under Section 141(a), which confers upon any newly elected board of directors *full* power to manage and direct the business and affairs of a Delaware corporation.[31]

Both *QVC* and *Quickturn* involved binding contractual arrangements that the board of directors had voluntarily imposed upon themselves. This case involves a binding bylaw that the shareholders seek to impose involuntarily on the directors in the specific area of election expense reimbursement. Although this case is distinguishable in that respect, the distinction is one without a difference. The reason is that the internal governance contract—which here takes the form of a bylaw—is one that would also prevent the directors from exercising their full managerial power in circumstances where their fiduciary duties would otherwise require them to deny reimbursement to a dissident slate. That this limitation would be imposed by a majority vote of the shareholders rather than by the directors themselves, does not, in our view, legally matter.[32]

AFSCME contends that it is improper to use the doctrine articulated in *QVC* and *Quickturn* as the measure of the validity of the Bylaw. Because the Bylaw would remove the subject of election expense reimbursement (in circumstances as defined by the Bylaw) entirely from the CA's board's discretion (AFSCME argues), it cannot fairly be claimed that the directors would be precluded from discharging their fiduciary duty. Stated differently, AFSCME argues that it is unfair to claim that the Bylaw prevents the CA board from discharging its fiduciary duty where the effect of the Bylaw is to relieve the board entirely of those duties in this specific area.

That response, in our view, is more semantical than substantive. No matter how artfully it may be phrased, the argument concedes the very proposition that renders the Bylaw, as written, invalid:

---

30. *Quickturn*, 721 A.2d at 1291.

31. *Id.* at 1291–92 (italics in original, internal footnotes omitted).

32. Only if the Bylaw provision were enacted as an amendment to CA's Certificate of Incorporation would that distinction be dispositive. *See* 8 *Del. C.* § 102(b)(1) and § 242.

the Bylaw mandates reimbursement of election expenses in circumstances that a proper application of fiduciary principles could preclude. That such circumstances could arise is not far fetched. Under Delaware law, a board may expend corporate funds to reimburse proxy expenses "[w]here the controversy is concerned with a question of policy as distinguished from personnel o[r] management." [33] But in a situation where the proxy contest is motivated by personal or petty concerns, or to promote interests that do not further, or are adverse to, those of the corporation, the board's fiduciary duty could compel that reimbursement be denied altogether.[34]

It is in this respect that the proposed Bylaw, as written, would violate Delaware law if enacted by CA's shareholders. As presently drafted, the Bylaw would afford CA's directors full discretion to determine what *amount* of reimbursement is appropriate, because the directors would be obligated to grant only the "reasonable" expenses of a successful short slate. Unfortunately, that does not go far enough, because the Bylaw contains no language or provision that would reserve to CA's directors their full power to exercise their fiduciary duty to decide whether or not it would be appropriate, in a specific case, to award reimbursement at all.[35]

\* \* \*

In arriving at this conclusion, we express no view on whether the Bylaw as currently drafted, would create a better governance scheme from a policy standpoint. We decide only what is, and is not, legally permitted under the DGCL. That statute, as currently drafted, is the expression of policy as decreed by the Delaware legislature. Those who believe that CA's shareholders should be permitted to make the proposed Bylaw as drafted part of CA's governance scheme, have two alternatives. They may seek to amend the Certificate of Incorporation to include the substance of the Bylaw; *or* they may seek recourse from the Delaware General Assembly.

Accordingly, we answer the second question certified to us in the affirmative.

QUESTIONS ANSWERED.

---

**33.** *Hall v. Trans–Lux Daylight Picture Screen Corp.*, 171 A. 226, 227 (Del.Ch.1934); *See also Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 345 (Del.1983) (reimbursement of "reasonable expenses" permitted where the proxy contest "was actually one involving substantive differences about corporation policy.").

**34.** Such a circumstance could arise, for example, if a shareholder group affiliated with a competitor of the company were to cause the election of a minority slate of candidates committed to using their director positions to obtain, and then communicate, valuable proprietary strategic or product information to the competitor.

**35.** *See Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998) ("Although the fiduciary duty of a Delaware director is unremitting, the exact course of conduct that must be charted to properly discharge that responsibility will change in the specific context of the action the director is taking with regard to either the corporation or its shareholders."). A decision by directors to deny reimbursement on fiduciary grounds would be judicially reviewable.