# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN J. GORMAN, IV, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **C.A. No. 10183-VCN** |
| | : | |
| GARY SALAMONE and | : | |
| ROBERT W. HALDER, | : | |
| | : | |
| Defendants, | : | |
| | : | |
| and | : | |
| | : | |
| WESTECH CAPITAL CORP., a | : | |
| Delaware corporation, | : | |
| | : | |
| Nominal Defendant. | : | |

## MEMORANDUM OPINION

Date Submitted:  April 8, 2015
Date Decided:  July 31, 2015

Neil B. Glassman, Esquire, Stephen B. Brauerman, Esquire, Vanessa R. Tiradentes, Esquire, and Sara E. Bussiere, Esquire of Bayard, P.A., Wilmington, Delaware and Daniel H. Byrne, Esquire and Dale Roberts, Esquire of Fritz, Byrne, Head & Harrison, PLLC, Austin, Texas, Attorneys for Plaintiff.

Joseph B. Cicero, Esquire, Paul D. Brown, Esquire, and Stephanie S. Habelow, Esquire of Chipman Brown Cicero & Cole LLP, Wilmington, Delaware, Attorneys for Defendants.

NOBLE, Vice Chancellor

This action is another episode in the ongoing dispute over the proper composition of the board of Westech Capital Corp. ("Westech" or the "Company"). On May 29, 2014, this Court issued a Memorandum Opinion and Order (the "Memorandum Opinion"), designating a four-member board (the "First 225 Board").[1] On December 9, 2014, the Supreme Court affirmed in part and reversed in part, identifying five board members (the "Supreme Court Decision").[2] Plaintiff brings this Section 225 action based largely on factual developments after the Memorandum Opinion.

## I. BACKGROUND

### A. *The Parties*

Plaintiff John J. Gorman ("Gorman") is a Westech stockholder and board member.[3] He can vote a majority of Westech's common stock, as well as its Series A Preferred Stock.[4] According to him, Defendant Gary Salamone ("Salamone") is Westech's former Chief Executive Officer ("CEO"), and Salamone and Defendant Robert W. Halder ("Halder," and with Salamone, "Defendants") are former board members. Defendants claim that they continue to hold those positions.

---

[1] *In re Westech Capital Corp.*, 2014 WL 2211612 (Del. Ch. May 29, 2014).
[2] *Salamone v. Gorman*, 106 A.3d 354 (Del. 2014).
[3] Unless specified otherwise, the facts have been drawn from the First Amended Verified Complaint (the "Complaint" or "Compl.") and attached exhibits.
[4] These are the only two classes of Westech stock.

1

B. *The Initial Section 225 Action*

On August 27, 2013, two separate actions were filed with this Court pursuant to 8 *Del. C.* § 225 to determine the composition of Westech's board of directors.[5] The Court consolidated those suits, identifying Gorman as plaintiff and Salamone, Halder, and Michael Dura ("Dura") as defendants (the "Initial 225 Action"). The Court entered a status quo order (the "Status Quo Order"), temporarily designating Salamone, Halder, and Dura as directors, and keeping Salamone in place as CEO.[6]

The parties disputed the operation of two subsections of a voting agreement that set forth how Westech's directors are selected. Following trial on a paper record, the Court concluded, based on its interpretation of the voting agreement, that Westech's board consisted of four members: Gorman, Terrence J. Ford ("Ford"), Salamone, and Dura. Both sides took issue with aspects of the Memorandum Opinion, and both appealed to the Supreme Court. In December

---

[5] Westech is a financial services holding company incorporated in Delaware and headquartered in Austin, Texas. Its primary operating subsidiary is a broker dealer, Tejas Securities Group, Inc. ("Tejas"). By early August 2014, Salamone had notified the Financial Industry Regulatory Authority that Tejas was below its net capital requirements, forcing it to shut down.

[6] Gorman did not contest Salamone's position as CEO in the Initial 225 Action. He now alleges that throughout the Initial 225 Action, Salamone abused his position and violated the Status Quo Order. Salamone allegedly attempted to cause Westech improperly to pay himself and Halder, attempted to cause the Company to advance Salamone, Halder, and Dura their legal fees, and entered into an agreement with Halder to terminate Halder's Westech employment.

2014, the Supreme Court determined that Westech's board included Gorman, Ford, Halder, Salamone, and Dura. Thus, Halder was added to the list of Westech directors.

Gorman now contends that certain developments during the appeal of the Memorandum Opinion had the effect of removing Halder and Salamone from Westech's board, and Salamone from his position as CEO. More specifically, Gorman alleges that in July 2014, Halder resigned his board seat, and Westech's stockholders acted through written consent to remove Salamone as CEO.[7] The Complaint's first two counts seek declarations that Defendants are no longer Westech directors. The remaining counts depend on resolution of the first two, because they deal with purported board action, the validity of which hinges on the determination of the board's proper composition.

C. *Halder Resigns from All Westech Positions*

On July 2, 2014 (while the parties were appealing the Memorandum Opinion), Halder tendered his "formal resignation from all positions at Westech Capital Corp.," excluding "any position held at TI Building or its subsidiaries at

---

[7] Salamone's board seat is (or was) tied to his executive position.

th[at] time."[8] He confirmed his resignation in a July 31, 2014, affidavit filed in litigation in Texas:

> On or about July 2, 2014, by email communication directed to Gary Salamone . . . , I resigned from all positions, memberships and offices held by me with respect to Westech and its operating subsidiaries and affiliates excepting only my position as manager of TSBGP, LLC. TSBGP, LLC is the general partner of TI Building Partnership Ltd.[,] the legal entity that owns a building located at 8226 Bee Caves Road, Austin, Texas 78746. The only relationship I have with respect to Westech is that of a minority shareholder owning approximately 2.7% of Series A stock.[9]

After resigning from the Company, Halder joined ClearView Trading Advisors, Inc. ("ClearView"), a Westech competitor. He also brought litigation against the Company in a Texas court, seeking to terminate his employment agreement (the "Halder Action").

D. *Gorman Purports to Remove Salamone as CEO*

On July 7, 2014 (again, during the appeal of the Memorandum Opinion), Gorman supposedly acted by stockholder written consent to amend Westech's bylaws to allow stockholders to remove and replace corporate officers (the "Amended Bylaw"). The Amended Bylaw provides:

---

[8] Opening Br. of Defs. in Supp. of Their Mots. to Dismiss the First Amended Verified Compl. Ex. A. Defendants do not argue that this carve out is relevant to these proceedings.
[9] Compl. Ex. C.

4

**Section 6.2.  Term of Office.**  The elected officers of the Corporation shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders.  All officers elected by the Board shall hold office until the next annual meeting of the Board and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification or removal from office.  Any officer may be removed, with or without cause, at any time by the Board *or by the stockholders acting at an annual or special meeting or acting by written consent pursuant to Section 2.8 of these Bylaws.  The Board shall, if necessary, immediately implement any such removal of an officer by the stockholders.*  Any officer appointed by the Chairman of the Board or President may also be removed, with or without cause, by the Chairman of the Board or President, as the case may be, unless the Board otherwise provides.  Any vacancy occurring in any elected office of the Corporation may be filled by the Board *except that any such vacancy occurring as a result of the removal of an officer by the stockholders shall be filled by the stockholders.*[10]

Gorman immediately sought to implement the Amended Bylaw by removing Salamone as Westech's CEO, electing himself to that role, and electing Craig Biddle ("Biddle") to fill the board seat vacated by Gorman's new appointment to the CEO position.[11]  According to Gorman, Westech's board has since consisted of himself, Ford, Biddle, and Dura.  Defendants have refused to recognize the July consents as valid, and Salamone has continued to act as the Company's CEO and a director.

---

[10] Compl. Ex. D (emphasis added).

[11] Again, Westech's bylaws grant the Company's CEO a board seat.  If Gorman were properly elected as CEO, he would have also assumed the CEO board position, vacating his former seat.

On January 29, 2015, consistent with his belief that he remains CEO, Salamone sent a notice of a telephonic board meeting to Dura, Ford, Gorman, and Halder.[12] After Salamone circulated a list of discussion items, Gorman indicated his intention also to discuss the status and removal of Salamone as CEO and director, as well as the Halder Action. The meeting was held on February 2, with Salamone and all who were noticed present. Gorman objected to Halder's participation because of his July 2014 resignation from "all positions" with the Company. Gorman also believed that the July 7 written consents had removed Salamone from the board.

The parties discussed the topics that Salamone had identified previously. Salamone made two motions, the "First Purported Motion" and the "Second Purported Motion," which were seconded by Halder and Dura. Salamone, Halder, and Dura voted for, and Gorman and Ford voted against, both motions. Gorman also made a motion: to remove Salamone as Westech's CEO. A brief discussion ensued, during which Dura and Halder expressed confidence in Salamone, and the topic was changed before the motion could be seconded.[13] However, Ford subsequently renewed Gorman's motion (the "Removal Motion"). After Gorman

---

[12] The Supreme Court Decision, which provided that Halder was a director, had been issued by this time. Halder had not acted as a director following the Memorandum Opinion.

[13] Gorman also made a motion, which Ford seconded, to bar Halder from future board meetings. Ford and Gorman voted in favor of the motion. Dura, Halder, and Salamone opposed it.

seconded the Removal Motion, but before a vote could occur, Dura, Halder, and Salamone voted to adjourn the meeting. Ford and Gorman then reconvened on another line and voted to remove Salamone from his position as CEO.

## II. NATURE OF THE PROCEEDINGS

Gorman seeks declarations that Salamone and Halder no longer serve on Westech's board, which he claims consists of himself, Ford, Dura, and Biddle. Because he alleges that Defendants were not directors as of the purported February 2, 2015, board meeting, he requests that the Court declare the First and Second Purported Motions, approved by Defendants and Dura, invalid. On the other hand, he asks that the Court confirm the Removal Motion, which Gorman and Ford approved.

Defendants insist that they are Westech directors, as established by the Supreme Court Decision, and both have moved to dismiss pursuant to Court of Chancery Rule 12(b)(6), for failure to state a claim upon which relief can be granted.[14] They argue that Count I, contending that Salamone is no longer a director, is deficient because it relies on the validity of the Amended Bylaw, which authorizes Westech's stockholders to remove and replace corporate officers. Defendants contend that such a bylaw conflicts with Delaware law. They insist that Count II, seeking a declaration that Halder is not on the board, also fails

---

[14] Both Defendants filed motions to dismiss the Complaint. They briefed the issues jointly.

because it depends on Halder's July 2014 resignation. Supposedly, Halder could not have resigned his directorship at that time because the Memorandum Opinion had been issued in May, excluding him from the board. Although the Supreme Court eventually reversed this Court on that point, it did not do so until December 2014.

The Court must therefore determine (i) whether the Amended Bylaw, authorizing Westech's stockholders to remove corporate officers over the board's objection, is valid under Delaware law, and (ii) whether Halder's July 2, 2014, resignation from all positions at Westech could have encompassed the board seat to which the Supreme Court Decision would entitle him.[15] As noted, whether Gorman's claims regarding the First and Second Purported Motions and the Removal Motion survive turns on how the two threshold questions are answered.

Gorman has moved for entry of a status quo order pending the outcome of this lawsuit, and for a finding of contempt and imposition of sanctions against Salamone for alleged violations of a November 26, 2014, Court order. Those issues are addressed following resolution of the motions to dismiss.

## III. ANALYSIS

The Court will only dismiss for failure to state a claim when "plaintiff would not be entitled to recover under any reasonably conceivable set of

---

[15] Whether stockholders could replace or nominate officers in another context need not be addressed.

8

circumstances."[16]   At this stage, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the non-moving party's favor.[17]

A. *Count I Must Be Dismissed Because the Amended Bylaw Is Invalid*

Gorman attempted to use the July 7, 2014, written consents to oust Salamone from his position as Westech's CEO, and by extension, remove him from the Company's board.  However, Delaware law does not allow stockholders to remove directly corporate officers through authority purportedly conferred by a bylaw.  Such a bylaw would unduly interfere with directors' management prerogatives by preventing them from discharging one of their most important functions.[18]  The Amended Bylaw is thus invalid, and Gorman's actions in reliance on it were of no effect.  His first count must be dismissed as a matter of law.

1. Officer Selection under Section 142

Gorman argues that Section 142(b) of the Delaware General Corporation Law (the "DGCL") authorizes the stockholders to set in the bylaws the manner in which corporate officers are replaced.  That section provides:

---

[16] *Cent. Mort. Co. v. Morgan Stanley Mort. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

[17] *Id.*

[18] Perhaps the question should be viewed as one of private ordering.  However, as set forth later, a Delaware corporation is a board-centric entity.  Other governance structures can be imposed on other entities, if that is what the stakeholders desire.

9

Officers shall be chosen in such manner and shall hold their offices for such terms as are prescribed by the bylaws or determined by the board of directors or other governing body. Each officer shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal. Any officer may resign at any time upon written notice to the corporation.[19]

Section 142(b) does not speak to how corporate officers may be removed, never mind grant stockholders such a power. Rather, it allows bylaws to establish a method for selecting officers and to dictate their terms of office. The provision references officer removal, but is silent regarding how that can be effectuated.

According to Section 142(e), "[a]ny vacancy occurring in any office of the corporation by death, resignation, removal or otherwise, shall be filled as the bylaws provide. In the absence of such provision, the vacancy shall be filled by the board of directors or other governing body." Again, this provision provides no guidance on how corporate officers may be removed, it only addresses how to fill vacancies.

Nevertheless, Gorman reads into Section 142 a grant of authority to stockholders to set the manner by which officers may be removed.[20] He attempted to utilize that perceived power to authorize Westech's stockholders to remove

---

[19] 8 *Del. C.* § 142(b).

[20] The Amended Bylaw also purports to grant stockholders the ability to fill vacancies resulting from an officer's removal. The Court need not (and does not) analyze that aspect of the Amended Bylaw because its validity is irrelevant to the matter at hand. Because a bylaw may not allow stockholders to remove officers over the board's objection, Gorman's attempt to implement the Amended Bylaw was improper.

10

directly the Company's officers. Under the Amended Bylaw, the stockholders would be free to exercise that power over the objection of Westech's board of directors, who would be required to "immediately implement any such removal of an officer by the stockholders."

Although the Amended Bylaw is not authorized by Section 142, stockholders do generally have a broad power to adopt and amend bylaws "relating to the business of the corporation, the conduct of its affairs, and the rights or powers or the rights or powers of its stockholders, directors, officers or employees."[21] However, the stockholders' right to amend bylaws is not unlimited and the Amended Bylaw falls outside the permissible scope.

2. Stockholders' Power to Adopt Bylaws

Section 109 does not explicitly restrict the scope of proper subject matter for a bylaw, but a bylaw cannot conflict with the company's certificate of incorporation or the law.[22] Stockholders' ability to amend bylaws is "not coextensive with the board's concurrent power and is limited by the board's management prerogatives under Section 141(a)."[23]

---

[21] 8 *Del. C.* § 109(b).

[22] *Id.*

[23] *CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 232 (Del. 2008).

11

Section 141(a), which establishes "the bedrock statutory principle of director primacy,"[24] specifies that "[t]he business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certification of incorporation."[25] A board's

> responsibility entails the duty to establish or approve the long-term strategic, financial and organizational goals of the corporation; to approve formal or informal plans for the achievement of these goals; to monitor corporate performance; and to act, when in the good faith, informed judgment of the board it is appropriate to act.[26]

Stockholders "may not directly manage the business and affairs of the corporation, at least without specific authorization in either the statute or the certificate of incorporation."[27] Therefore, bylaws may not "mandate how the board should decide specific substantive business decisions, but . . . [they may] define the

---

[24] *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *9 (Del. Ch. Nov. 7, 2013). *See also Fox v. CDX Hldgs., Inc.*, C.A. No. 8031-VCL (Del. Ch. July 28, 2015).

[25] *See also McMullin v. Beran*, 765 A.2d 910, 916 (Del. 2000) ("One of the fundamental principles of the Delaware General Corporation Law statute is that the business affairs of a corporation are managed by or under the direction of its board of directors."); *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) ("A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."). "No such broad management power is statutorily allocated to the shareholders." *CA, Inc.*, 953 A.2d at 232.

[26] *Grimes v. Donald*, 1995 WL 54441, at *1 (Del. Ch. Jan. 11, 1995).

[27] *CA, Inc.*, 953 A.2d at 232.

process and procedures by which those decisions are made."[28]  Valid bylaws focus

on process, and "[w]hether or not a bylaw is process-related must necessarily be

determined in light of its context and purpose."[29]  The Court may look to the intent

and effect of a bylaw to determine whether it is a proper subject for stockholder

action; "even facially procedural bylaws can unduly intrude upon board

authority."[30]

   3.  The Amended Bylaw Is Invalid

At its core, the issue of whether the Amended Bylaw is valid depends on the

answer to the question: Does removing an individual from corporate office

constitute a substantive business decision?  If yes, then wresting that function from

the board through a bylaw would improperly intrude on its authority to manage the

Company.  The Court's reflexive answer to the question is that such action does

constitute a substantive business decision and would allow stockholders directly to

manage corporate business and affairs.  A primary way by which a corporate board

manages a company is by exercising its independently informed judgment

regarding who should conduct the company's daily business.[31]  How a board

---

[28] *Id.* at 234-35.
[29] *Id.* at 236-37.
[30] *Id.* at 236.
[31] *See, e.g.*, *Klaassen*, 2013 WL 5967028, at *15 ("Often it is said that a board's most important task is to hire, monitor, and fire the CEO.").  *Klaassen* cites several scholars for this observation.  *See, e.g.*, Douglas G. Baird & Robert K. Rasmussen, *The Prime Directive*, 75 U. CIN. L. REV. 921, 923 (2007) ("[T]he challenge of

13

without the power to control who serves as CEO could effectively establish a long-term corporate strategy is difficult to conceive.

Gorman argues that the Amended Bylaw merely prescribes the procedure by which Westech's officers are elected and removed: it defines who may select and replace officers. Theoretically, if the bylaw simply governs procedure, it would not impermissibly interfere with the board's managerial authority. Gorman notes that the Amended Bylaw does not prevent the board from removing officers. The board may also fill vacancies, but not those created by stockholder action under the bylaw. Gorman insists that the Amended Bylaw merely specifies the mechanism for selecting and removing officers, and thus does not violate Section 141(a).

That argument fails because the Amended Bylaw does more than simply dictate how officers are appointed and removed. The Amended Bylaw permits stockholders to remove and replace officers without cause, which would allow them to make substantive business decisions for the Company. Indeed, the bylaw

_____

hiring and firing managers is the single most important job that directors face."); Melvin Aron Eisenberg, *Legal Models of Management Structure in the Modern Corporation: Officers, Directors, and Accountants*, 63 CAL. L. REV. 375, 403 (1975) ("[The Board] is optimally suited to . . . select[], monitor[], and remov[e] the members of the chief executive's office. It therefore follows that the primary objective of the legal rules governing the structure of corporate management should be to ensure effective performance of that cluster of functions . . . ." (footnote omitted)); Usha Rodrigues, *A Conflict Primacy Model of the Public Board*, 2013 U. ILL. L. REV. 1051, 1075 (2013) ("Appointing a CEO, after all, is likely the most important decision a board will ever make.").

14

was apparently intended to take an important managerial function from the board.[32]

Gorman argues unconvincingly that the Amended Bylaw "does nothing to interfere with the Board's ability to select and remove officers, rather it also allows the stockholders to have input into who serves as an officer of the Company."[33] However, the bylaw would clearly provide stockholders with more than an advisory function: they could remove officers (at a meeting or by written consent) without cause. If they exercised that power, the board would be required to "immediately implement . . . [the] removal of an officer by the stockholders." That directive could compel board action, potentially in conflict with its members' fiduciary duties.[34] The stockholders' right to remove officers for any (or no) reason would unduly constrain the board's ability to manage the Company.[35]

---

[32] When the Amended Bylaw is viewed "in light of its context and purpose," *CA, Inc.*, 953 A.2d at 237, it is clear that it was never intended to be process-related. Gorman aimed to usurp the Board's authority in order to gain power over the Company, which has been subject to an ongoing control dispute.

[33] Answering Br. of Pl. in Opp'n to Defs.' Mot. to Dismiss the First Amended Verified Compl. Pursuant to 8 *Del. C.* § 225, at 25.

[34] Defendants argue that the Amended Bylaw could improperly instruct Westech's directors to take action incompatible with their fiduciary duties by requiring them immediately to implement the removal of an officer if necessary to carry out a stockholder vote. Conceivably, that would obligate the board to effect an officer's removal, even if the directors determined that the Company would be best served otherwise. A bylaw cannot mandate board action "in circumstances that a proper application of fiduciary principles could preclude." *CA, Inc.*, 953 A.2d at 240.

[35] The Amended Bylaw would create the practical problem of allowing for a potentially infinite loop of removal and appointment of Westech's officers. Stockholders could remove an officer and appoint the successor. The board could then replace the stockholders' selection, after which nothing would stop the

15

The Amended Bylaw thus fails under Delaware law and the written consents intended to remove Salamone as CEO were of no effect.[36] Therefore, Count I is dismissed.[37]

---

stockholders from continuing the cycle. Such change and uncertainty regarding the identities of the corporate officers would negatively impact the Company's ability to carry on its business and develop and implement a strategic plan.

[36] A bylaw that merely prescribed a method for officer removal by the board would perhaps be permissible. Permitting stockholders to set the mode for officer replacement would allow them to dictate a procedure, and would not necessarily step unduly on management's toes. A majority stockholder, if he wants to do so and if he can, should use his voting power to reconstitute the board, instead of compromising the board's core functions and duties. Defendants' alternative argument that implementation of the Amended Bylaw would impair certain of Salamone's vested contract rights need not be addressed.

Whether there might be extraordinary circumstances that might require shareholder intervention in the officer-designation process is a question not presented by the pending motion and, thus, not addressed by the Court.

[37] Although it need not be answered here, a related question is whether a bylaw could grant stockholders the ability to elect directly individuals to vacant corporate office positions. Before its 1967 revision, the DGCL explicitly authorized directors or stockholders to elect corporate officers. Edward P. Welch et al., *Folk on the Delaware General Corporation Law* § 142.04 (2015). One could infer that the revision's omission of that authority stripped stockholders of their power. However, in the first edition of his treatise, Professor Folk commented that the 1967 revision intended no substantive change. *Id.* Others have agreed with that sentiment. *See, e.g.*, Edward H. Cohen & Craig B. Smith, *The Corporation: Management and Operation (N.Y. and Del.), in Transactional Lawyer's Deskbook: Advising Business Entitles* § 13.30 (Arthur Norman Field & Morton Moskin eds., 2001) ("Officers are chosen in such manner and serve for such term as are set forth in the by-laws or determined by the board. The power to elect officers may thus reside in either the board or the stockholders, based on the provisions of the by-laws.").

Nonetheless, Defendants' position finds ample support in scholarly and legal commentary. *See, e.g.*, R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations & Business Organizations* § 4.10[C] (2015) ("The persons elected or appointed to office are selected by the board and, absent a contract,

16

B. *Count II Survives Because it Is at Least Reasonably Conceivable That Halder Resigned as a Westech Director*

"Determining whether a director or officer has resigned is a question of fact determined by the circumstances of each case."[38] Actions taken after an apparent resignation may provide evidence as to whether a director actually intended to step down.[39] Following his July 2, 2014, formal resignation from all positions at Westech, Halder confirmed that his only remaining relationship with Westech was as a 2.7% minority stockholder.[40] That assertion suggests that Halder maintains no current employment relationship or position of authority with the Company.

Defendants argue that despite his broadly worded resignation, Halder could not have resigned as a Westech director on July 2, 2014, because in its May 29, 2014, Memorandum Opinion, this Court had concluded that Halder was not a director. They submit that until the Supreme Court reversed that aspect of the

---

serve at the pleasure of the board."); Dennis J. Block et al., *The Corporate Counsellor's Deskbook* § 8.02[G][3][c] at 8-39 (5th ed. 1999) ("Because the selection of the officers is directly the province of the board of directors and not the stockholders, the bylaws regarding the officers are focused on the duties of the board of directors in electing and maintaining officer positions."); Robert C. Clark, *Corporate Law* § 3.2 (1986) ("As a formal legal matter, the directors, acting as a board at properly called meetings, have extremely broad powers and responsibilities. These include the appointment, supervision, and removal of the officers who actually run the corporation . . . . In a word, the board is supposed to supervise the entire operation of the business.").

[38] *Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d 437, 458 (Del. Ch. 2012) (quoting *Dionisi v. DeCampli*, 1995 WL 398536, at *8 (Del. Ch. June 28, 1995)).

[39] *Id.*

[40] Again, he retained a related position at TSBGP, LLC.

17

Memorandum Opinion, Halder did not hold a board seat. Supposedly, he could not have surrendered a position that he did not possess, and he never intended to do so.

Nonetheless, the Memorandum Opinion was being appealed when Halder resigned and when he affirmed his resignation through his affidavit. He never carved out an exception for his claimed board seat.[41] Instead, he asserted that his only relationship to the Company going forward was that of a minority stockholder. The Supreme Court ultimately concluded that Halder was properly elected to Westech's board as of September 17, 2013.[42]

Halder's alleged post-resignation conduct is consistent with a lack of interest in serving prospectively as a Company director. He began working for ClearView, a Westech competitor, and encouraged and facilitated certain employees' departures from a Westech subsidiary.[43] He also initiated the Halder Action against the Company. These actions appear incompatible with serving as a Westech director; at the least, it is reasonably conceivable that on July 2, 2014,

---

[41] Halder's explicit exclusion of his position at TSBGP, LLC from his resignation could lead one to infer that he also would have carved out his directorship if he had intended to retain it.

[42] *Salamone*, 106 A.3d at 385. Thus, Halder would have been a director on his resignation date.

[43] Again, these allegations are taken as true for purposes of the motions to dismiss.

Halder resigned from any position (or expected position) as a director.[44]

Therefore, the motions to dismiss Count II are denied.

## C. *Counts III and IV Cannot Be Dismissed*

Counts III and IV seek declarations that the First and Second Purported Motions were not validly approved. As established *supra*, Section III.B, it is at least reasonably conceivable that Halder was no longer a board member in February 2015. If he were not, then his seconding of Salamone's motions would have had no effect, and the motions would have failed to receive the support of a majority of directors. Accordingly, the motions to dismiss Counts III and IV are denied.

## D. *Count V Must Be Dismissed*

Count V seeks a declaration that Gorman and Ford validly approved the Removal Action. The success of that count rests on the premise that Gorman and Ford represented a majority of Westech's board. However, as established *supra* Section III.A, Count I, seeking a declaration that Salamone is not a director, must

---

[44] Defendants question why Gorman did not raise the issue of Halder's resignation during the appeal of the Initial 225 Action. During these proceedings, Gorman's counsel suggested that Delaware counsel was unaware of Halder's resignation until after the Supreme Court argument. Tr. of Oral Argument 30. That is not a satisfying explanation for failing to apprise the Supreme Court of supposedly material developments. Nevertheless, that failure to communicate does not affect the Court's current analysis. To the extent that Defendants argue that Gorman waived any argument predicated on Halder's resignation, is estopped from asserting such argument, or is barred by laches, those possible defenses do not support dismissal now.

be dismissed.[45]   Given that Salamone was apparently a board member as of February 2, 2015, Westech's board had at least four members, and Gorman and Ford could not have voted as a majority.  Regardless of Halder's status, the Removal Action was not validly adopted.

E.  *Status Quo Order*

Gorman has moved the Court to enter a status quo order, temporarily designating a three-member board of himself, Ford, and Dura for the pendency of this action.  To justify entry of a status quo order, Gorman must establish "1) that the order will avoid imminent irreparable harm; 2) a reasonable likelihood of success on the merits; and 3) that the harm to plaintiff[] outweighs the harm to defendants."[46]  A status quo order is often warranted in a Section 225 action to "preclude[] the directors presently in control of the corporation from engaging in transactions outside the ordinary course of the corporation's business until the control issue is resolved."[47]  An order may

---

[45] Gorman has alleged that Salamone's employment contract has expired.  No successor has been validly elected and Salamone has continued to act as CEO. Count I was based on the July 7, 2014, written consents, or, alternatively, the February 2, 2015, Removal Motion.  As explained, those actions could not have removed Salamone.

[46] *Raptor Sys., Inc. v. Shepard*, 1994 WL 512526, at *2 (Del. Ch. Sept. 12, 1994).

[47] *Arbitrium (Cayman Islands) Handels AG v. Johnson*, 1994 WL 586828, at *3 (Del. Ch. Sept. 23, 1994).

assure stability: so long as the identity of the lawful board of directors is legally uncertain, it is undesirable to permit the directors who are managing the firm *pendente lite* (but who may later be found not to be the lawful board) to make material, potentially irreversible changes in the firm or in its assets or business.[48]

Gorman has no likelihood of success on his first count; that claim must be dismissed. Conversely, he does have a reasonable likelihood of success on his second count. It is again appropriate to enter a status quo order to govern Westech during the pendency of the litigation.[49] Uncertainty regarding the identity of the lawful board would impair the corporate administration. There are two pending actions against Westech that subject the Company to potential liability. The Court has already been forced to enter orders guiding corporate action during these proceedings. Gorman has alleged improprieties, which occurred both before and after the issuance of the Supreme Court Decision, relating to the governance of Westech. As the Company's majority stockholder, Gorman is incentivized to maximize its value.

While a status quo order is appropriate, Gorman's proposed order is not. Gorman suggests that he, Ford, and Dura serve as Westech's directors pending the outcome of the lawsuit, but "[a]s the label suggests, status quo orders, in the usual

---

[48] *Id.*

[49] When considering an application for a status quo order during the early stages of litigation, the Court is more focused on the existence of irreparable harm and the relative hardships than on the merits of a plaintiff's claims. *Raptor Sys., Inc.*, 1994 WL 512526, at *2.

21

case, provide for incumbents to continue in office."[50]   Gorman argues that his proposed board consists of three individuals who are indisputably directors.  Given the dismissal of Count I of the Complaint, there is no justification for excluding Salamone from the board.  Even if that count had survived, Salamone could not be kept off the board without altering the status quo and prematurely granting Gorman the relief he seeks.

On the other hand, the functional status quo recommends that Halder not be designated to the status quo board.  He had not served as a director after this Court issued the Memorandum Opinion, a timeframe encompassing the date on which this action was commenced.  Although the Supreme Court Decision named him to the board, the Supreme Court was unaware of Halder's resignation from Westech.  Open questions now exist regarding the interplay between the Supreme Court Decision and Halder's departure from all positions at the Company.  While those issues are being addressed, a proper status quo board consists of Gorman, Ford, Dura, and Salamone, with Salamone continuing as Chairman.[51]   A status quo order, substantially similar to Gorman's proposed order, will be entered.

---

[50] *Pharmalytica Servs., LLC v. Agno Pharm., LLC*, 2008 WL 2721742, at *3 n.6 (Del. Ch. July 9, 2008).

[51] *Cf. id.* ("Here . . . the functional status quo recommends that [defendant] not be returned to active management positions pending this matter's resolution; he has not contested that he has been inactive in [the company's] affairs since 2006. Restoring him at this juncture would ignore the realities of [the company's] operation in the interim.").

22

F. *Plaintiff's Motion for Contempt and Sanctions Is Premature*

A party may be held in civil contempt for violating a Court order of which he had notice and by which he was bound.[52]  The moving party must establish contempt by clear and convincing evidence.  If that burden is met, the contemnor may show why he was unable to comply with the Court's order.[53]  A finding of contempt is ultimately a matter for the Court's discretion.[54]

Gorman bases his motion on allegations that from December 10, 2014, to January 27, 2015, Salamone caused Westech to pay over $200,000 to himself and others, in violation of a November 26, 2014, Order (the "Order").  The Order established an escrow account from which payments were prohibited absent the board's approval or a further Court order "until the earlier of (i) any decision, settlement, resolution or other action, including without limitation a ruling by the Supreme Court of Delaware in the appeal captioned *Salamone, et al. v. Gorman*, C.A. No. 343, 2014, that causes the Board no longer to be deadlocked . . . ."[55]

As discussed, Gorman contends that Halder resigned his Westech directorship on July 2, 2014.  Although the Supreme Court Decision held that Westech's board consisted of Gorman, Halder, Salamone, Dura, and Ford, that

---

[52] *TR Investors, LLC v. Genger*, 2009 WL 4696062, at \*15 (Del. Ch. Dec. 9, 2009).
[53] *Id.*
[54] *Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1181 (Del. Ch. 2009).
[55] Nov. 26, 2014, Stipulated Order Governing the Sale of Westech's Headquarters Building ¶ 3.

decision had not accounted for Halder's apparent departure. Because, according to Gorman, Halder is no longer a board member, the Supreme Court Decision did not break the board deadlock—the board remained divided between Gorman and Ford on one hand, and Salamone and Dura on the other.[56] Gorman therefore asserts that the escrow established by the Order remains in effect, and Salamone violated the Order by paying money out of that account without the approval of Westech's board or the Court's order.

However, the debate over whether Halder is a Westech director is unresolved. If he is a director, as Defendants suggest, then the Supreme Court Decision broke the board's deadlock, and Salamone's payments from the escrow were authorized. The Court could only hold Salamone in contempt if it could grant summary judgment in Gorman's favor on Count II of the Complaint. Given that such a finding would prematurely decide a contested factual issue in the underlying litigation, consideration of Plaintiff's Motion for Contempt and Sanctions is deferred.[57]

---

[56] Again, the Complaint cannot support Salamone's exclusion from the board.

[57] The Supreme Court Decision concluded: "the composition of the Westech Board is as follows . . . ." *Salamone*, 106 A.3d at 385. Halder was included as a director. As discussed, *supra* Section III.B, the effect of Halder's resignation on his board status is a contested issue. For now, there is no clear and convincing evidence that Salamone violated the Order, never mind proof of a knowing and willful violation.

## IV. CONCLUSION

Defendants' Motions to Dismiss are granted in part and denied in part. Because the Amended Bylaw is invalid under Delaware law, Count I, seeking a declaration that Salamone is not on Westech's board, is dismissed. Count V must be dismissed as well, as Gorman and Ford did not represent a board majority when they attempted to pass the Removal Motion.

On the other hand, Count II, seeking a declaration that Halder is not a director, cannot be dismissed. Accordingly, Counts III and IV survive because the validity of the First and Second Purported Motions cannot be determined given the uncertainty regarding the board's composition.

A ruling on Gorman's Motion for Contempt and Sanctions is deferred. A status quo order will be entered temporarily designating Gorman, Ford, Dura, and Salamone as board members.

Implementing orders will be entered.