# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RANDY CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0926-MTZ |
| | ) | |
| TAIPEI AMERICAN SCHOOL FOUNDATION, TINA KOO, JOSEPH HEI, ELIZABETH WANG, JAY CHENG, TIM MORTON, GAYLE TSIEN, CHARLOTTE ACKERT, TK CHIANG, CARL WEGNER, JOSEPH HWANG, PAUL HSU, SUSANNA SIEW KANG, JOHN HWANG, MAE O'MALLEY, ALEX HSU, EDMOND NG, and VERA WU, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: October 25, 2022
Date Decided: January 27, 2023

Catherine A. Gaul, ASHBY & GEDDES, Wilmington, Delaware; H. Gregory Baker, Joyce Nadipuram, PATTERSON BELKNAP WEBB & TYLER LLP, New York, New York; *Attorneys for Plaintiff.*

A. Thompson Bayliss, Daniel J. McBride, ABRAMS & BAYLISS LLP, Wilmington, Delaware; Harvey J. Wolkoff, Matthew Mazzotta, QUINN EMANUEL URQUHART & SULLIVAN LLP, Boston, Massachusetts; *Attorneys for Defendants.*

ZURN, Vice Chancellor.

This case involves a dispute over the rights of general members of a nonprofit nonstock corporation that oversees a private school in Taipei. The general members have always held the power to elect directors to the board; recently, the board amended the corporation's charter and bylaws to take away the general members' power to make, amend, or repeal bylaws. A general member contends this state of affairs violates 8 *Del. C.* § 109, and that bringing it about was a breach of fiduciary duty.

Under the corporation's governing documents, parents of all enrolled students are general members. The plaintiff is a parent of two enrolled students and therefore a general member. The corporation's directors are special members. From time to time since its founding, the corporation's board has amended the corporation's certificate of incorporation and bylaws to rebalance the rights and powers of the board, the directors as special members, and the parents as general members. As of 2017, the governing documents reflected that the board and the general members held concurrent rights to adopt, amend, or repeal the bylaws. The directors as special members did not have independent rights to amend the bylaws.

In 2019, the board amended the corporation's governing documents to transfer the general members' rights to adopt, amend, or repeal bylaws to the special members. The general members retained only the right to elect directors, and any rights required by the Delaware General Corporation Law.

1

In 2021, the plaintiff asked the board to restore the general members' rights to vote on the bylaws, repeal any invalid amendments to the governing documents, and permit the general membership a vote on the 2019 and 2020 amendments. The board rejected those requests.

The plaintiff then sued the corporation, and current and former directors, for amending the 2019 charter in violation of the general members' voting rights under Section 109(a) of the Delaware General Corporation Law. The defendants moved to dismiss, asserting the charter amendment complied with Section 109(a) because the directors as special members could still vote on the bylaws. This opinion concludes the plaintiff has stated a claim that the 2019 charter amendment violates Section 109(a) by divesting the general members, who have the right to vote on directors, of their right to vote on the bylaws.

## I. BACKGROUND[1]

Plaintiff Randy Chen (the "Plaintiff") is a "General Member" of defendant Taipei American School Foundation (the "Foundation").[2] The Foundation is a nonprofit nonstock corporation incorporated in Delaware.[3] Defendants Tina Koo, Joseph Hei, Elizabeth Wang, Jay Cheng, Tim Morton, Gayle Tsien, Charlotte Ackert, TK Chiang, Carl Wegner, Joseph Hwang, Paul Hsu, Susanna Siew Kang, John Hwang, Mae O'Malley, Alex Hsu, Edmond Ng, and Vera Wu (collectively, the "Director Defendants," and together with the Foundation, "Defendants") are current and former members of the Foundation's board of directors (the "Board").[4] The

---

[1] I draw the following facts from the Verified Complaint, the documents attached and integral to it. Docket Item ("D.I.") 1 [hereinafter "Compl."]; *see, e.g.*, *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Gardner Denver, Inc. S'holders Litig.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014); *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *7 (Del. Ch. Dec. 17, 2013) ("Applying [Delaware] Rule [of Evidence] 201, Delaware courts have taken judicial notice of publicly available documents that 'are required by law to be filed, and are actually filed, with federal or state officials.'" (quoting *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 584 (Del. Ch. 2007) and citing *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 n.28 (Del.2004), and *In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11–12 (Del. Ch. Sept. 1, 1992))).

[2] Compl. ¶¶ 2, 12.

[3] *Id.* ¶¶ 2, 13; Compl. Ex. E [hereinafter "2019 COI"] art. Fourth ("This corporation shall be strictly a nonprofit, non-stock, and non-political organization . . . .").

[4] Compl. ¶¶ 14–22, 24–31. Tina Koo, Joseph Hei, Elizabeth Wang, Jay Cheng, Tim Morton, Gayle Tsien, Charlotte Ackert, TK Chiang, and Carl Wegner were current directors when Plaintiff filed his complaint. *Id.* ¶¶ 14–22. Joseph Hwang, Paul Hsu, Susanna Siew Kang, John Hwang, Mae O'Malley, Alex Hsu, Edmond Ng, and Vera Wu are former directors. *Id.* ¶¶ 24–31. Plaintiff filed notices of voluntary dismissal for defendants Juliana Finucane and Winston Town. D.I. 2; D.I. 3.

Director Defendants have served on the Board between 2013 and the present,[5] with at least thirteen of the seventeen having served on the Board during the 2018-2019 fiscal year that is the setting for this case.[6]

## A. The School's History And Early Governance Structure

Founded in 1949, Taipei American School (the "School") is a "college preparatory independent school[]" offering children, and in particular those with parents who are United States citizens, "an American-based education with a global perspective."[7] Since July 21, 1971, the Foundation has overseen the School in accordance with the purposes enumerated in its certificate of incorporation, including "[t]o assist in the building, establishing, maintaining and operating schools and educational institutions of all kinds in the United States and in foreign

---

[5] Compl. ¶¶ 14–22, 24–31.

[6] *Id.* ¶¶ 14, 16, 19–20, 22, 24–31. The Foundation's fiscal year ends on June 30th. Compl. Ex. A [hereinafter "2020 Bylaws"] art. VIII § 1; D.I. 7 [hereinafter "DOB"], Ex. 3 [hereinafter "2019 Bylaws"] art. VIII § 1; Compl. Ex. D [hereinafter "2017 Bylaws"] art. VIII § 1; Compl. Ex. C [hereinafter "2013 Bylaws"] art. VIII.

[7] Compl. ¶¶ 1, 37.

4

countries."[8]  The Foundation was created as "strictly a non-profit, non-stock and non-political organization."[9]

The Foundation's 1971 certificate of incorporation provided:  "The board of directors shall be elected by members at the annual meeting of the corporation to be held on such a date as the by-laws may provide, and shall hold office until their successors are respectively elected and qualified."[10]  It further provided:  "The board of directors is expressly authorized to make, alter or repeal the by-laws of this corporation."[11]  The 1971 certificate of incorporation did not expressly authorize the members to "make, alter or repeal" the bylaws.  The Foundation

---

[8]  DOB, Ex. 2 [hereinafter "1971 COI"] art. Third ("The primary purpose of the organization shall be:  To furnish financial and administrative aid and support for educational programs in both the United States and in foreign countries.  To assist in the building, establishing, maintaining and operating schools and educational institutions of all kinds in the United States and in foreign countries, and generally do and perform all acts and to have all facilities necessary, useful, incidental or advantageous in the carrying out of all or any of the foregoing objects.  To collect, receive and maintain any fund, or funds, by subscription, or otherwise, and to apply the income and principal therefor to the promotion of the purposes herein set out.  To accept gifts or endowments by way of trust or otherwise and to administer the same with all fiduciary and investment powers necessary or appropriate." (formatting altered)); *see also, e.g.*, 2019 COI art. Third.

[9]  1971 COI art. Fourth.

[10]  *Id.* art. Eighth.

[11]  *Id.*

5

reserve[d] the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon members herein are granted subject to this reservation, provided however, no change shall be made affecting the status as a non-profit organization.[12]

The parties did not provide the Court with the Foundation's 1971 bylaws.[13]

This opinion will refer to the Foundation's certificate of incorporation, whether or not amended, as the "Charter," and its bylaws, whether or not amended, as the "Bylaws."

## B. Amendments To The Foundation's Governing Documents

As permitted under the 1971 Charter, the Board amended its governing documents repeatedly over the decades, including its Bylaws at least twice from 1980 to 2013,[14] and then its Bylaws and Charter at least five times from 2013 to 2020.[15] These changes reallocated power between the directors as special members on one hand, and nondirector parents as general members on the other. In the end, the Bylaws stated that only directors as special members, and the Board, held the

---

[12] 1971 COI art. Tenth.

[13] Defendants' counsel told the Court Defendants could produce the 1971 bylaws. D.I. 23 [hereinafter "Hr'g Tr."] at 10–11.

[14] 2013 Bylaws at 1 ("Revised and re-adopted the 15th day of November 1980, Amended the 26th day of October 1982, and Further Amended the 1st day of May 2013." (formatting and capitalization in original)).

[15] Compl. Ex. B [hereinafter "2013 COI"]; 2013 Bylaws; Compl. Ex. H [hereinafter "2017 COI"]; 2017 Bylaws; Compl. Ex. K [hereinafter "2018 COI"]; 2019 COI; 2019 Bylaws; 2020 Bylaws.

power to amend the Foundation's Bylaws. The Board's vesting of that authority exclusively in those persons serving on the Board, to the exclusion of general members, is the subject of this action.

In May 2013, the Charter reiterated the Board's authority to "make, alter or repeal the by-laws of this corporation."[16] The 2013 Bylaw amendments bifurcated the Foundation's membership into "General Members" and "Director Members,"[17] permitting the "general membership" to elect "Elected Directors" while only the Director Members could appoint "Appointed Directors."[18] Those amendments also expressly gave the parent General Members the power to adopt, amend, or repeal the Bylaws.[19] The 2013 governing documents did not specify an approval threshold for General Members to amend or repeal the Bylaws.[20]

The Board enacted more amendments in the fall of 2017. The 2017 Bylaws and Charter amendments set a two-thirds approval threshold for General Members

---

[16] 2013 COI art. Eighth.

[17] 2013 Bylaws art. II § 1 ("The Foundation shall have two classes of members, General Members and Director Members."); Compl. ¶ 43.

[18] 2013 Bylaws art. II § 1.

[19] *Id.* art. X ("These By-Laws may be amended, added to or repealed by the Board of Directors by majority vote of the Directors then in office, provided notice of intention to amend the By-Laws shall be mailed to each Director[] at least five days before the meeting. These By-Laws may also be amended, added to or repealed by the General Members of the Association, provided there has been advance[d] public notice of the proposed changes and [a] quorum is present during the voting."); Compl. ¶ 43.

[20] *See* 2013 Bylaws art. X.

7

to amend or repeal the Bylaws.[21] They also renamed the Foundation's membership as "General Members" and "Special Members."[22] They enumerated that each Elected Director "shall automatically be a Special Member," though "[s]tatus as a Special Member shall not affect an individual's status as a General Member, if any."[23] "An Appointed Director shall not be a General Member and will not be deemed a Special Member."[24] The General Members would elect Elected Directors, while the Special Members would elect Appointed Directors.[25]

More changes followed in 2018. But under the 2018 Charter, the Board and the General Members still had the right to vote to amend or repeal the Bylaws, and the Special Members did not.[26]

In May 2019, the Board amended the Charter (the "2019 Charter Amendment") and the Bylaws to take away the General Members' right to vote on the Bylaws and restrict the General Members to voting only on Elected Directors.[27]

---

[21] 2017 Bylaws art. VIII § 3; 2017 COI art. Twelfth.

[22] 2017 Bylaws art. II § 1; 2017 COI art. Fourth ("This corporation shall have two classes of members, General Members and Special Members, and the conditions of membership shall be as provided for in the Bylaws.").

[23] 2017 Bylaws art. II § 1(b).

[24] *Id.* art. III § 2(b).

[25] *Id.* art. III §§ 3–4.

[26] 2018 COI art. Twelfth.

[27] Compl. ¶ 56; 2019 COI. *Compare* 2017 Bylaws art. II § 7 (emphasis added), *with* 2019 Bylaws art. II § 7 (emphasis added). A chart supporting this comparison is attached as an appendix to this opinion.

The 2019 amendments removed the General Members' right to vote on the Bylaws and limited the right to vote on Bylaw amendments to Special Members and the Board. The 2019 Charter Amendment read in relevant part:

> The members or the Board of Directors may adopt, amend, or repeal the Bylaws of this corporation. The amendment or repeal of the Bylaws by the members shall require the affirmative vote of a majority of this corporation's Special Members (as defined in the Bylaws of this corporation) then serving; *the General Members (as defined in the Bylaws of this corporation) shall have no right to vote on any such amendment or repeal of the Bylaws*.[28]

Article VIII, Section 3 of the 2019 Bylaws was amended to include similar language reflecting the right to amend or repeal the Bylaws held by the Board and the Special Members, and the General Members' lack of rights to do the same.[29] Plaintiff alleges "[t]he Board did not publicize this change and offered no contemporaneous public explanation for its amendment . . . to deprive General Members of their right to vote on amendments to or repeal of [the] Bylaws."[30]

---

[28] 2019 COI art. Twelfth (emphasis added).

[29] 2019 Bylaws art. VIII § 3 ("The members or the Board of Directors may amend or repeal these Bylaws. The amendment or repeal of the Bylaws by the members shall require the affirmative vote of a majority of this corporation's Special Members then serving; the General Members shall have no right to vote as such on any amendment or repeal of these Bylaws. The amendment or repeal of the Bylaws by the Board of Directors shall require the affirmative vote of a majority of the directors then in office.").

[30] Compl. ¶ 57.

The 2019 Bylaws also designated both Elected and Appointed Directors as Special Members.[31] With that change, the humans who are Special Members are the same humans who are on the Board: only those humans, to the exclusion of humans who are only General Members, have the ability to vote on Bylaws.

## C. Plaintiff's 2021 Communications With The Board

On April 27, 2021, "following the Spring Association General Meeting," Plaintiff sent a letter to Board Chair Koo addressing the Board's 2019 and 2020 amendments to the Foundation's governing documents.[32] Plaintiff asserted the Board's actions "contravened the will of the General Members," "disenfranchise[d] General Members," and were "not consistent with Delaware Corporate Law."[33] Plaintiff, writing on behalf of the General Members, requested the Board "recognize the invalidity of its actions by amending the Certificate of Incorporation to restore to the General Members the power to adopt, amend or repeal bylaws," repeal those and other amendments, and notice a meeting to allow the General Members to vote on the requested amendments.[34]

---

[31] 2019 Bylaws art. II § 1(b).

[32] Compl. ¶ 71; Compl. Ex. F.

[33] Compl. Ex. F at 1–2.

[34] *Id.* at 2.

On May 21, the Board refused Plaintiff's requests.[35] In its response, the Board provided Plaintiff with a memorandum it received from non-Delaware counsel explaining the Board's general reasons for its amendments and claiming "[a]ll of the amendments were made in full compliance with applicable law, [and] are valid amendments to the governing documents."[36] The memorandum offers several purported objectives for amending the Foundation's governing documents, including "stability," maintenance of "best practices," and protecting the Foundation's "long-term health and best interests."[37] The Board also offered its intention to "modernize" the School's governance.[38]

### D.     This Litigation

On October 27, 2021, Plaintiff filed a Verified Complaint (the "Complaint") alleging two Counts: Count I, asserting Defendants breached fiduciary duties owed to Plaintiff as a General Member; and Count II, asserting a violation of 8 *Del. C.* § 109(a).[39] The Complaint sought declaratory and injunctive relief.[40] On December 13, Defendants filed a motion to dismiss under Rule 12(b)(6) (the

---

[35] Compl. ¶ 75.

[36] Compl. Ex. G; *id.* at 1.

[37] *Id.* at 1–3.

[38] Compl. ¶¶ 62, 76.

[39] *Id.* ¶¶ 77–90.

[40] *Id.* at 23–24.

"Motion").[41]  The parties briefed the Motion, and I heard argument on October 25, 2022.[42]  Under separate cover, I asked for supplemental briefing on Count I as to whether the nonstock Foundation's directors owe its members fiduciary duties.[43] This opinion considers Count II.

## II.  ANALYSIS

The standard for a motion to dismiss under Rule 12(b)(6) for failure to state a claim for relief is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof."[44]

Plaintiff claims the Charter's divestment of the General Members' power to vote on bylaws violates 8 *Del. C.* § 109(a) ("Section 109(a)").[45]  Defendants argue the 2019 Charter Amendment does not violate Section 109(a) because while the General Members can no longer vote to adopt, amend, or repeal the Foundation's Bylaws,

---

[41] D.I. 4.

[42] DOB; D.I. 9 [hereinafter "PAB"]; D.I. 11 [hereinafter "DRB"]; D.I. 22; Hr'g Tr.

[43] *See* D.I. 24 at 3–4 (citing *In re NYMEX S'holder Litig.*, 2009 WL 3206051, at *13–15 (Del. Ch. Sept. 30, 2009), *Gassis v. Corkery*, 2014 WL 2200319, at *14 (Del. Ch. May 28, 2014), and *Oberly v. Kirby*, 592 A.2d 445, 462–63 (Del. 1991)).

[44] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations omitted).

[45] Compl. ¶¶ 88–90 (quoting 8 *Del. C.* § 109(a), and 2019 COI art. Twelfth).  Plaintiff does not make any challenge as to the Bylaws.

the Special Members retain that power under the 2019 Charter.[46]  I conclude Plaintiff has pled a Section 109(a) violation.

The dispute hinges on the meaning of Section 109(a)'s phrase "entitled to vote."  The subsection reads:

> The original or other bylaws of a corporation may be adopted, amended or repealed by the incorporators, by the initial directors of a corporation other than a nonstock corporation or initial members of the governing body of a nonstock corporation if they were named in the certificate of incorporation, or, before a corporation other than a nonstock corporation has received any payment for any of its stock, by its board of directors.  After a corporation other than a nonstock corporation has received any payment for any of its stock, the power to adopt, amend or repeal bylaws shall be in the stockholders ***entitled to vote***.  ***In the case of a nonstock corporation, the power to adopt, amend or repeal bylaws shall be in its members entitled to vote***.  Notwithstanding the foregoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors or, in the case of a nonstock corporation, upon its governing body.  The fact that such power has been so conferred upon the directors or governing body, as the case may be, shall not divest the stockholders or members of the power, nor limit their power to adopt, amend or repeal bylaws.[47]

Plaintiff reads Section 109(a) to provide that any member "entitled to vote" on anything at all enjoys the right to vote on bylaws.  Plaintiff argues that "entitled to vote" means just that, pointing to other instances in the DGCL where the General Assembly modified the phrase.[48]

---

[46] DOB at 16.

[47] 8 *Del. C.* § 109(a) (emphasis added).

[48] PAB at 14–16 (citing and quoting 8 *Del. C.* §§ 141(k), 160(c)–(d), 215(c)(2)–(3), 253(a), 255(c), 271(a), 276(a)); 8 *Del. C.* § 141(k) ("entitled to vote at an election of directors"); 8

13

Defendants read "members entitled to vote" to mean only those members entitled to vote on bylaws. Defendants contend as long as any member with voting rights has the power to amend or repeal the Bylaws, the Foundation's governance structure is compliant. Defendants point to Section 102(a)(4), which permits nonstock corporations to have members or classes of members without any voting rights or powers,[49] and Section 215(c), which implies that certain members of nonstock corporations may not be entitled to vote on every subject.[50] Defendants also contend the phrase "entitled to vote" in Section 109 must be limited to its treatment of bylaws, as contrasted against "entitled to vote on any matter," as used in Section 160(d).[51] Under Defendants' interpretation, the Special Members' ability to vote on Bylaws renders the 2019 Amendments compliant with Section 109(a).

Where a statute is unambiguous, "there is no room for judicial construction and no need to review the legislative history,"[52] and "the plain meaning of the statute

*Del. C.* § 160(c)(2) ("entitled to vote in the election of directors"); 8 *Del. C.* § 160(d) ("entitled to vote on any matter"); 8 *Del. C.* § 215(c)(2) ("entitled to vote on the subject matter"); 8 *Del. C.* § 215(c)(3) ("entitled to vote thereon"); 8 *Del. C.* § 253(a) ("entitled to vote on such merger . . . . entitled to vote thereon"); 8 *Del. C.* § 255(c) ("entitled to vote on the merger"); 8 *Del. C.* § 271(a) ("entitled to vote thereon"); 8 *Del. C.* § 276(a) ("entitled to vote for the election of members of its governing body or are entitled to vote for dissolution . . . entitled to vote thereon . . . . entitled to vote thereon . . . .").

[49] DOB at 19; 8 *Del. C.* § 102(a)(4).

[50] DOB at 19; 8 *Del. C.* §§ 215(c)(2)–(3).

[51] DRB at 10; 8 *Del. C.* § 160(d).

[52] *Wylain, Inc. v. TRE Corp.*, 412 A.2d 338, 347 (Del. Ch. 1979) (citing *A&P Stores v. Hannigan*, 367 A.2d 641, 642 (Del. 1976)).

controls."[53] "Only where a statute is ambiguous and its meaning cannot be clearly ascertained does a court engage in the process of statutory construction and interpretation,"[54] as by looking at other statutory sections.[55]

For purposes of this action, Section 109(a) is not "reasonably susceptible of different conclusions or interpretations."[56] The meaning of "entitled to vote" is plain and unambiguous: entitled to cast a ballot, full stop. The statute's plain language does not limit the entitlement to voting on particular issues. Reading the statute as a whole does not compel any inference that the entitlement should be so limited. Section 109(a) grants stockholders, or nonstock members, who are entitled to vote— at all, on anything—the right and power to vote on the corporation's bylaws.[57]

---

[53] *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 176 (Del. 2001) (collecting cases).

[54] *Id.* at 175 (citing *Carper v. New Castle Cnty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981)).

[55] *E.g.*, *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1245 (Del. 1985) ("The words 'port', 'facility' and 'island' are not defined in the Coastal Zone Act. Words used in a statute that are undefined should be given their ordinary, common meaning." (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980), and *Bailey v. State*, 450 A.2d 400, 402 (Del. 1982))).

[56] *Distefano v. Watson*, 566 A.2d 1, 4 (Del. 1989) (citing *Coastal Barge*, 492 A.2d at 1246).

[57] *Cf. Kidsco Inc. v. Dinsmore*, 674 A.2d 483, 492 (Del. Ch. 1995) ("8 *Del. C.* § 109(a) provides that the power to adopt, amend or repeal by-laws shall be in the shareholders entitled to vote, except that the certificate of incorporation may also confer that power upon the directors."), *aff'd and remanded*, 670 A.2d 1338 (Del. 1995); *CA, Inc. v. AFSCME Empls. Pension Plan*, 953 A.2d 227, 231 (Del. 2008) (broadly describing Section 109 as empowering "both the board of directors and the shareholders," as in all shareholders, the power to change bylaws).

15

This simple interpretation, which affords a broad entitlement to vote on bylaws, is consistent with the common law's emphasis on the importance of that right.[58] "By its terms Section 109(a) vests in the shareholders a power to adopt, amend or repeal bylaws that is legally sacrosanct, i.e., the power cannot be non-consensually eliminated or limited by anyone other than the legislature itself."[59] The right to vote on bylaws is "a potent tool to discipline boards," a "powerful right[] [the members] can use to protect themselves," and an opportunity to regulate and check authority of the fiduciaries the members elected.[60] "Traditionally, the bylaws

---

*In re BCBSD, Inc.* contains dicta that applies Section 109(a) in a different context. 2004 WL 2419161, at *13 n.71 (Del. Super. Oct. 4, 2004). *In re BCBSD, Inc.* ruled on an appeal of two Delaware Insurance Commissioner decisions regarding whether two insurance companies could "affiliate." *Id.* at *1. The Superior Court found the Commissioner's authority to vacate the affiliation order was proper because, among other reasons, the appellant did not seek her approval before amending its bylaws, which was a condition of the affiliation order. *Id.* at *11. The affiliation agreement provided that a certain class of directors was entitled to vote on the bylaw amendment. *Id.* at *2. In a footnote, the Court explained that the failure to hold a vote by that director class violated Section 109. *Id.* at *11 n.71 ("[T]he right to amend the qualification for Class II directors rested with the members of the board entitled to vote to change such qualifications—the then-existing Class II board members."). *In re BCBSD* does not inform the analysis here.

[58] *Jana Master Fund, Ltd. v. CNET Networks, Inc.*, 954 A.2d 335, 339 n.16 (Del. Ch. 2008) ("To the extent there is any ambiguity in interpreting bylaws, doubt is resolved in favor of the stockholders' electoral rights." (internal quotation marks omitted) (collecting authorities)); *id.* at 345–46 ("[T]he 'rule of construction in favor of franchise rights' instructs me to interpret bylaw provisions 'in the manner most favorable to the free exercise of traditional electoral rights . . . .'" (quoting *Harrah's Ent., Inc. v. JCC Hldg. Co.*, 802 A.2d 294, 312 (Del. Ch. 2002))).

[59] *CA, Inc.*, 953 A.2d at 232 (noting the stockholder statutory power over bylaws is "limited by the board's management prerogatives under Section 141(a)").

[60] *Cf. Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 956–57 (Del. Ch. 2013); *id.* at 956–57 ("Thus, even though a board may, as is the case here, be granted authority to adopt bylaws, stockholders can check that authority by repealing board-

16

have been the corporate instrument used to set forth the rules by which the corporate board conducts its business."[61] A stockholder or member who can vote on the corporation's leadership is entitled to alter the rules by which that leadership must perform.[62]

---

adopted bylaws. And, of course, because the DGCL gives stockholders an annual opportunity to elect directors, stockholders have a potent tool to discipline boards who refuse to accede to a stockholder vote repealing a forum selection clause." (citing 8 *Del. C.* § 211, and *MM Cos., Inc. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1127 (Del. 2003))); *see also, e.g.*, *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 559 (Del. 2014) (discussing amending bylaws as one tool stockholders might use to gain or retain corporate control (citing *In re Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407, 409 (Del. 1985))); *Sciabacucchi v. Liberty Broadband Corp.*, 2017 WL 2352152, at *18 (Del. Ch. May 31, 2017) (considering the ability to vote on bylaw amendments as one of several metrics measuring corporate control (citing *In re Zhongpin Inc. S'holders Litig.*, 2014 WL 6735457, at *7–8 (Del. Ch. Nov. 26, 2014), *rev'd on other grounds by In re Cornerstone Therapeutics Inc. S'holder Litig.*, 115 A.3d 1173 (Del. 2015))); *Am. Int'l Rent a Car, Inc v. Cross*, 1984 WL 8204, at *3 (Del. Ch. May 9, 1984) ("If a majority of American International's stockholders in fact disapproved of a Board's amendment of the bylaw, several recourses were, and continue to be, available to them. They could vote the incumbent directors out of office. Alternatively, they could cause a special meeting of the stockholders to be held for the purpose of amending the bylaws . . . .").

[61] *Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1078 (Del. Ch. 2004) (collecting authorities), *aff'd*, 872 A.2d 559 (Del. 2005); *CA, Inc.*, 953 A.2d at 234–35 ("It is well-established Delaware law that a proper function of bylaws is not to mandate how the board should decide specific substantive business decisions, but rather, to define the process and procedures by which those decisions are made.").

[62] "Under Delaware law, the stockholders, and members of a nonstock corporation, have the power to elect directors." *Oberly*, 592 A.2d at 452 (citing 8 *Del. C.* §§ 141(j)–(k), 215); 8 *Del. C.* § 211(b). Stockholders and members of nonstock corporations "entitled to vote" each have the identical "power to adopt, amend or repeal bylaws." 8 *Del. C.* § 109(a).

While members of nonstock corporations have a statutory right to remove classified members of the governing body for cause, the 2019 Charter amendments purported to opt out of 8 *Del. C.* § 141(k). *See Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d 437, 456 (Del. Ch. 2012) (applying 8 *Del. C.* § 141(k) to a nonstock corporation); 8 *Del. C.* § 141(k)(1); 2019 COI art. Fourteenth ("Section 141(k) of the General Corporation Law of the State of Delaware shall not apply to this corporation and, as such, neither the General Members nor

While the foregoing principles were developed in the stockholder context, Section 109(a) employs the same phrase "entitled to vote" for both stockholders and members of nonstock corporations, which carries the same meaning.[63] The ability to vote on bylaws is particularly meaningful for voting members of nonstock corporations if, as I have asked counsel to consider, the members are not owed fiduciary duties and so neither they nor the beneficiary of the corporation can enforce the directors' behavior through fiduciary litigation.[64]

The other differences between stock and nonstock corporations do not compel a different interpretation of Section 109(a)'s unambiguous phrase "entitled to vote." The DGCL permits nonstock corporations to create member classes without voting rights.[65] Under Section 109(a), any members who can vote on leadership, or on anything else, can vote on bylaws; those who can't vote at all cannot vote on

_____

the Special Members, acting in such capacities, shall have the right to remove any director."). Plaintiff does not challenge this amendment.

[63] *New Castle Cnty. Dep't of Land Use v. Univ. of Del.*, 842 A.2d 1201, 1207, n.16 (Del. 2004) (noting the "presumption that the same words used twice in the same act have the same meaning" ((internal quotation marks omitted) (quoting Norman A. Singer, *Statutes and Statutory Construction*, § 46.06, at 193 (Rev. 2000))).

[64] *See Oberly*, 592 A.2d at 467–68 ("As for the beneficiaries, who logically stand in the same position as the stockholders of a for-profit corporation, their interests must be represented by the Attorney General."); *id.* at 468 ("Delaware law unambiguously places the burden of protecting the interests of beneficiaries upon the Attorney General." (citing *Wier v. Howard Hughes Med. Inst.*, 407 A.2d 1051, 1057 (Del. Ch. 1979))).

[65] 8 *Del. C.* § 102(a)(4).

bylaws.[66]  As a practical matter, the General Members are not nonvoting members, and the Foundation has no nonvoting members.  The 1971 Charter stated:  "The board of directors shall be elected by the members at the annual meeting of the corporation . . . ."[67]  Since at least 2013, when the Board bifurcated the members into a general group and a subgroup, the Bylaws state the General Members retain "the right to elect the Elected Directors."[68]  And since at least 2017, the General Members have had all "voting rights required by the Delaware General Corporation Law."[69]  Accordingly, they are, and have been, "entitled to vote" under Section 109(a) and hold the associated statutory power over the Foundation's Bylaws.

As a final note, the Foundation has also conferred the power to adopt, amend, or repeal its Bylaws to the Board, as Section 109(a) permits.[70]  This does not disturb the General Members' enjoyment of that same power.  The statute states:  "The fact

---

[66] 1 Robert S. Saunders et al., *Folk on the Delaware General Corporation Law*, § 109.02 at 1-91 (7th ed. 2022-2 Supp.) ("The statute provides that non-voting stockholders are not entitled to voting power over the bylaws.").

[67] 1971 COI art. Eighth.

[68] 2013 Bylaws art. II § 1; 2017 Bylaws art. II § 7(a)(i); 2019 Bylaws art. II § 7(b); 2020 Bylaws art. II § 7(b).

[69] 2017 Bylaws art. II § 7(a)(vii); 2019 Bylaws art. II § 7(b); 2020 Bylaws art. II § 7(b).

[70] 8 *Del. C.* § 109(a) ("Notwithstanding the forgoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors or, in the case of a nonstock corporation, upon its governing body."); *e.g.*, 1971 COI art. Eighth ("The board of directors is expressly authorized to make, alter or repeal the by-laws of this corporation."); 2013 COI art. Eighth (same); 2017 COI art. Twelfth ("The members or the Board of Directors may adopt, amend, or repeal the Bylaws of this corporation."); 2018 COI art. Twelfth (same); 2019 COI art. Twelfth (same).

that such power has been so conferred upon the directors or governing body, as the case may be, shall not divest the . . . members of the power, nor limit their power to adopt, amend or repeal bylaws."[71] Voting members of nonstock corporations maintain the power to adopt, amend, or repeal bylaws, regardless of whether the governing body has concurrent authority over the bylaws.

Before the 2019 Charter Amendment, General Members could adopt, amend, or repeal Bylaws.[72] Notwithstanding the General Members' right to elect directors to the Board,[73] the Board's 2019 Charter Amendment purported to divest the General Members of its power to adopt, amend, or repeal the Foundation's Bylaws.[74]

---

[71] 8 *Del. C.* § 109(a); *see Boilermakers*, 73 A.3d at 956–57 ("Thus, even though a board may, as is the case here, be granted authority to adopt bylaws, stockholders can check that authority by repealing board-adopted bylaws."); *cf.* S. Samuel Arsht & Lewis S. Black, *The 1974 Amendments to the Delaware Corporation Law*, at 376 (Prentice-Hall 1974) ("The prevailing view, which this amendment reflects, is that the stockholders have inherent power to adopt or amend the by-laws and that the intent of Section 109(a) before its amendment was to permit a corporation to grant to its directors concurrent authority, but not exclusive authority, to amend the by-laws.").

[72] *E.g.*, 2018 COI art. Twelfth ("The members or the Board of Directors may adopt, amend, or repeal the Bylaws of this [C]orporation. The amendment or repeal of the Bylaws by the members shall require the approval of two-thirds (2/3) of this [C]orporation's General Members voting, whether by mail, electronically, or at a meeting of the General Members, provided a quorum is represented, as those terms are defined in the Bylaws of this Corporation (the Special Members, as that term is defined in the Bylaws of this Corporation, shall have no right to vote as such on any amendment or repeal of the Bylaws.)"); 2017 COI art. Twelfth (same); 2013 COI (not expressly providing members rights to vote on the Bylaws).

[73] 2020 Bylaws art. II § 7(b); 2019 Bylaws art. II § 7(b).

[74] 2019 COI art. Twelfth ("[T]he General Members (as defined in the Bylaws of this corporation) shall have no right to vote on any such amendment or repeal of the Bylaws.").

20

Plaintiff has pled a violation of Section 109(a). The Motion is denied as to Count II pled against the Foundation and the Director Defendants who were on the Board at the time of the 2019 Charter Amendment.[75]

Count II fails to state a claim against Director Defendants Hei and Morton, whom Plaintiff alleged did not start their terms until the 2019–2020 fiscal year, after the 2019 Amendment,[76] and Director Defendants Cheng and Chiang, whom Plaintiff has not alleged served on the Board in 2019 at all.[77]

## III.    CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part** as to Count II. I have requested supplemental briefing for Count I. The parties should confer on a scheduling order for the remainder of the case.

---

[75] There are seventeen Director Defendants in this action. Compl.; D.I. 2; D.I. 3. Plaintiff has pled fifteen served on the Board in 2019. Compl. ¶¶ 14–16, 18–20, 22, 24–31. The Bylaws indicate "[a]t all times the Board of Directors shall be comprised of a minimum of nine (9) and a maximum of thirteen (13) individuals . . . ." 2020 Bylaws art. III § 2; 2019 Bylaws art. III § 2. To the extent the parties agree on which Director Defendants were not on the Board at the time of the 2019 Charter Amendment, the parties shall enter a stipulation voluntarily dismissing those Defendants.

[76] Compl. ¶¶ 15, 18 (pleading Director Defendants Hei and Morton have served on the Board since the 2019-2020 fiscal year). The 2019 Charter Amendment is dated May 21, 2019, before the June 30 start of the 2019-2020 fiscal year. Compl. ¶ 56; 2019 COI; 2020 Bylaws art. VIII § 1; 2019 Bylaws art. VIII § 1; 2017 Bylaws art. VIII § 1; 2013 Bylaws art. VIII.

[77] Compl. ¶¶ 17, 21.

# APPENDIX

The following chart demonstrates the Board's May 2019 swap of powers between the Special Members and the General Members, as cited in footnote 26.

| | 2017 Bylaws | 2019 Bylaws |
|---|---|---|
| **Art. II § 7(a)** | The voting rights of the *General Members* shall include:<br>(i) The right to elect the Elected Directors as provided in Article III, Section 3;<br>(ii) The right to adopt non-binding resolutions or recommendations to the Board of Directors;<br>(iii) The right to vote on an amendment of the Bylaws as provided by Article VIII, Section 3;<br>(iv) The right to vote on any sale, lease, transfer, or other disposition of all or any substantial part of the assets or properties of this corporation;<br>(v) The right to vote on any merger of this corporation, but only to the extent required by the Delaware General Corporation Law;<br>(vi) The right to vote on dissolution of this corporation; and<br>(vii) The right to vote on any other matters that may properly be presented to the General Members for a vote, pursuant to this corporation's Certificate of Incorporation, Bylaws, or action of the Board of Directors, or by operation of law. | The voting rights of the *Special Members* shall include:<br>(i) The right to adopt non-binding resolutions or recommendations to the Board of Directors;<br>(ii) The right to vote on the appointment of the Appointed Directors as provided in Article III, Section 4;<br>(iii) The right to vote on an amendment of the Bylaws as provided by Article VIII, Section 3;<br>(iv) The right to vote on any sale, lease, transfer, or other disposition of all or any substantial part of the assets or properties of this corporation;<br>(v) The right to vote on any merger of this corporation, but only to the extent required by the Delaware General Corporation Law;<br>(vi) The right to vote on dissolution of this corporation; and<br>(vii) The right to vote on any other matters that may properly be presented to the members for a vote, pursuant to this corporation's Certificate of Incorporation, Bylaws, or action of the Board of Directors, or by operation of law. |
| **Art. II § 7(b)** | The *Special Members* shall have no voting rights in their capacity as members other than the right to vote on the appointment of the Appointed Directors as provided in Article III, Section 4. | The *General Members* shall have no voting rights in their capacity as members other than the right to elect the Elected Directors as provided in Article III, Section 3, excepting only voting rights required by the Delaware General Corporation Law. |